LYDIA T. HASTINGS *vs.* DEMING J. HASTINGS & another.
DEMING J. HASTINGS & another *vs.* LYDIA T. HASTINGS.

Suffolk.   March 28, 29. — Sept. 19, 1877.   AMES & LORD, JJ., absent.

A testator by his will devised an estate to his daughter A. for life, with remainder in fee to such children as should be living at the time of her decease.  A. had three children, B., C. and D., of whom B. died in her lifetime, leaving two children. Thereupon in A.'s lifetime D. and C. executed and delivered an agreement, without consideration, to the mother of B.'s children, which recited the devise under the will, and that B.'s children might thereby be excluded from participation in the estate, and their belief that it was the testator's intention that the estate should be equally distributed among A.'s descendants, and stated that they renounced any and all claim to the portion of the estate "which would have belonged to B. had he lived, in favor of his children and their heirs forever, confirming it to them, and will defend the rights of said children and their heirs " to the estate against every claimant under the testator's will, so that they could hold it as fully as if B. had survived A.   The agreement also recited that the children of D. and C. might be placed in the same position as B.'s children, and stated that they confirmed to each other's children the proportion of the estate in the same manner as if they with B. had survived A.   Subsequently the children of B. died unmarried, without issue and intestate, in the lifetime of A., whom D. and C. survived.  *Held,* that B., C. and D. took a contingent remainder in the estate, and that, under the agreement, D. and C. undertook, in case they and any child or children of B. survived A., to convey to such child or children an undivided third part of the estate in fee; and that by the death of B.'s children the agreement, together with the covenant to defend, became of no effect.

THE FIRST CASE was a bill in equity, filed February 24, 1876, against Deming Jarves Hastings and Sally Ann Dwight, for specific performance of the following agreement, under seal, executed and delivered by them to Lydia T. Hastings:

" Know all men by these presents that we the undersigned, Deming Jarves Hastings, son of Sally Hastings and grandson of the late John Jarves of Boston, and John Dwight and Sally Ann Dwight, his wife, daughter of Sally Hastings and granddaughter of said John Jarves, all three of us of or late of the town of Medway, county of Norfolk and State of Massachusetts, have entered into the following agreement which witnesseth, viz. :

" That whereas by the last will and testament of John Jarves late of Boston, county of Suffolk and state aforementioned, dated March 26th A. D. 1819, and duly proved and allowed at a Probate Court for said county of Suffolk on the 8th September, 1823, the real estate belonging to him situated on the easterly side of Newbury Street in said Boston was bequeathed to Deming Jarves and his heirs to hold in trust for Sally Hastings, and at her death then in trust for the children of said Sally Hastings who shall be living at the time of her decease and their heirs forever, in fee simple, they to take and hold the same as tenants in common. And whereas the aforementioned will of said John Jarves may be so interpreted as to exclude the children of the late Samuel Jarves Hastings (who was also a son of said Sally Hastings and grandson of said John Jarves) from participation in the aforesaid Newbury Street estate, and whereas it is our sincere belief that the said John Jarves never intended to exclude any of the descendants of said Sally Hastings from participation in said property, but on the contrary he did intend a just and equal distribution of said property amongst the descendants of said Sally Hastings :

" Therefore, in consideration of the foregoing, and the further consideration of the sum of ten dollars paid to each of us by Lydia T. Hastings, guardian of the children of the late Samuel Jarves Hastings aforementioned, the receipt whereof is hereby acknowledged, we have renounced, and do by these presents renounce for ourselves and our heirs forever, any and all claim which we have or might have by any construction of the aforesaid will to the portion of the aforesaid estate, which would have belonged to said Samuel Jarves Hastings had he lived, in favor of his children and their heirs forever, confirming it to them, and will defend the rights of said children and their heirs to the aforementioned property against all and every other claimant

under the said John Jarves, so that they can take possession and hold the same as fully and completely as though their father had survived the said Sally Hastings :

" And furthermore, as it may so happen that the children of either of us, the said Deming Jarves Hastings and John Dwight and Sally Ann Dwight his wife, may be placed in the same position as that now held by the children of the late Samuel Jarves Hastings : We now by these presents, each to the other, do bind ourselves and our heirs forever to waive any right to a greater portion of the before mentioned estate, which might accrue in consequence of the death of either of us, than would fall to us should we survive the aforesaid Sally Hastings, but to confirm to the children of each of us the proportion of said estate in the same manner as though we altogether with the said Samuel Jarves Hastings had survived the said Sally Hastings.

" In confirmation of the foregoing agreement we hereunto set our hands and seals this the twenty-ninth day of June, A. D. 1852."

THE SECOND CASE was a bill in equity, filed March 4, 1876, to reform the above agreement.

The two cases were heard together before *Morton*, J., on motions for issues to be framed for a jury, and the following facts appeared :

In 1823, John Jarves of Boston died, and his will, dated March 26, 1819, contained, besides other provisions not material to be stated, the following : " I give and devise to my son Deming Jarves and his heirs my real estate on the easterly side of Newbury Street in said Boston, to hold to him and them, in trust to permit, suffer and sufficiently authorize and empower my daughter Sally Hastings and her assigns to have, receive and take the rents and issues thereof to her and their own sole and separate use and benefit during her natural life," " and from and immediately after the decease of my said daughter, then in trust for all and every the child and children of said Sally Hastings who shall be living at the time of her decease, and their heirs forever in fee simple, they to take and hold the same as tenants in common. All the rest and residue of my estate I give, devise and bequeath unto my son Deming Jarves, be the same real, personal or mixed, to have and to hold the same to him his heirs and assigns forever."

At the death of John Jarves, Sally Hastings and three children of hers, namely, Deming Jarves Hastings, Sally Ann Hastings, now Sally Ann Dwight, and Samuel Jarves Hastings, husband of Lydia T. Hastings, were living. On June 26, 1849, Samuel Jarves Hastings died, leaving two children by Lydia T. Hastings surviving, namely, Samuel Jarves Hastings, Jr., and Catharine Hastings. At the death of Samuel Jarves Hastings, there were living three children of Deming Jarves Hastings, and six children of Sally Ann Dwight, by her husband, John Dwight, now deceased. At the time the agreement was executed, on June 29, 1852, all these children of the parties were living.

On December 21, 1858, Samuel Jarves Hastings, Jr., died, and on December 19, 1861, Catharine Hastings died, both being unmarried, without issue and intestate. On November 28, 1875, Sally Hastings died, leaving Deming Jarves Hastings and Sally Ann Dwight, her only children surviving. Thereupon Lydia T. Hastings requested Deming Jarves Hastings and Sally Ann Dwight to convey and confirm to her one undivided third part of the estate devised by the will of John Jarves to Sally Hastings for life, which they refused to do.

Deming Jarves Hastings and Sally Ann Dwight contended that the agreement was made in its present form by mistake and did not express the agreement or carry out the intention of the parties at the time it was made; and that it was a voluntary agreement without consideration. It was admitted that they received no pecuniary consideration from Lydia T. Hastings, either personally or as guardian.

The judge reserved the case, upon the question as to the construction of the agreement, for the consideration of the full court. If the construction was as contended by Deming Jarves Hastings and Sally Ann Dwight, both bills were to be dismissed; otherwise, both cases were to stand for further hearing.

*C. A. Welch,* for Lydia T. Hastings.

*J. H. Benton, Jr.,* for Deming Jarves Hastings and Sally Ann Dwight.

SOULE, J. By the will of John Jarves, the defendants in the first case, Deming J. Hastings and Sally Ann Dwight, and their

brother, Samuel Jarves Hastings, took a contingent remainder in the land in question; the contingency being that they should survive Sally Hastings. If they all survived her, they were each to have one undivided third part in fee. If two survived, each would have an undivided half. If one only survived, he or she would have the whole. If neither survived, the land would go to Deming Jarves in fee. It was uncertain, therefore, whether either of them would have any estate in the land, and, if any, whether it would be in the whole or in an undivided part. The will, however, gave to each a contingent remainder in the whole. By the death of Samuel Jarves Hastings, the relation of his surviving brother and sister to the land was unchanged, except that it was made certain that, if they both survived Sally Hastings, each would have an undivided half of the land.

It was in this condition of the matter that the agreement was made on which the plaintiff rests her claim. The deceased brother had left two children who clearly had no rights under the will of John Jarves. The death of either of the defendants, during the life of Sally Hastings, would leave his or her children without any interest in the land, or any rights under the will. The agreement recites that it is made in consideration of the belief that it was the intention of the testator that the land in question should be equally distributed among the descendants of Sally Hastings.

The only question in the suit is as to the construction of this agreement. It is inartificially drawn, and obscurely expressed. If the language were clear, the instrument would be construed in accordance with the meaning ordinarily given to the terms employed, even though such construction should not consist with the intention indicated in that part which precedes and introduces the agreement itself. As, however, there is difficulty in finding the meaning of the parties if we limit the investigation to that part of the instrument in which the contract lies, we must interpret it with such assistance as we can derive from the circumstances in which it was made, as set forth in the recital in the instrument itself, and in the facts stated in the report.

It is contended by the plaintiff that the agreement is, in effect, an equitable assignment of a remainder of the fee, after the es-

tate for the life of Sally Hastings, in one third part of the land, to the children of Samuel Jarves Hastings, and that the covenant to defend the rights of the children and their heirs to the property estops the defendants to claim title in opposition to Lydia T. Hastings, the mother and heir at law of those children. In other words, the claim is that the defendants, having only a remainder contingent on their surviving Sally Hastings, released one third of the land to those children, and agreed to defend the title to that third to them and their heirs, against all others claiming under John Jarves. There being no consideration, pecuniary or meritorious, for the making of such a grant or the assumption of such a liability, and the legal effect of the instrument, if so construed, being quite different from the purpose set forth in its recitals, it will not be so construed, unless a different construction would violate some principle or established rule. This construction presupposes an intention on the part of the defendants to warrant to the children of their deceased brother an estate which was not yet theirs, and which it was by no means certain that they would ever have. There is nothing in the facts stated in the report, or in the recitals of the instrument, which indicates such intention. On the contrary, the instrument shows an intention merely to put the children in as good a relation to the inheritance as their father would have been in, and to leave the children of the respective defendants in an equally good relation to the inheritance, in case of the death of either defendant. The construction contended for by the plaintiff would not carry this intention into effect, but would place the defendants under an obligation to convey one third of the land away from the descendants of Sally Hastings, through the instrument which is made for the sole purpose of dividing the land equally and justly among her descendants.

The error involved in this construction is in supposing that the words which state the subject matter of the renunciation or release to be " the portion of the aforesaid estate which would have belonged to said Samuel Jarves Hastings had he lived " mean " had he outlived Sally Hastings." Such is not the natural nor the obvious meaning. The defendants, for the express purpose of putting the children of their deceased brother on an exact equality with themselves, so far as they can, with refer

ence to the estate in question, attempt to give to the children an assurance and covenant that, as against them, the defendants will not reap any advantage from the death of their father, but will permit them to stand in their father's place. To this end they say, "We renounce all claim which we have [now] in the portion which would have belonged to Samuel Jarves Hastings if he had lived" [till now]. As has already been said, the form of expression is not accurate nor precise for the purpose for which it is employed. The portion which the deceased brother would have had in the estate, if he had been living when the agreement was made, would have been a remainder contingent on his outliving Sally Hastings. He having died, the defendants could not properly be said to have any claim on that portion of the estate — that remainder contingent on his outliving one who had already outlived him. While he lived, they each had a contingent remainder in the whole, liable, if all survived Sally, to result in an estate in fee in an undivided third. After his death, they had each a contingent remainder in the whole, which would, if both survived Sally, result in a fee in an undivided half. That was the only change effected by his death, in their relation to the land.

The whole instrument is to be considered in determining the construction to be given to it; and, in view of the recitals which it contains of the state of the title under the will, of the situation of the children of Samuel by reason of his death, of the belief of the defendants as to the testator's purpose, and of the intention of the defendants as to the children of Samuel and as to their respective children, we think the meaning of the agreement to be that, in case any child or children of Samuel Jarves Hastings should survive Sally Hastings, the defendants, if they survived said Sally, would not avail themselves of the right given by the will to hold the fee to the exclusion of such child or children, but would convey to such child or children one undivided third part of said land in fee. If, then, we assume the agreement to be a deed of quitclaim of the premises thus described — that is, of a contingent remainder, in one third of the land, contingent on the defendants surviving Sally Hastings, and on some child of Samuel Jarves Hastings surviving her, the agreement, so far as the children are concerned, became a nullity, because

no one of them survived the said Sally; the contingency did not occur.

The covenant to defend the " property " is merely a covenant to defend the premises released; and since these were not the land, but only a contingent-remainder in the land, which failed by reason of the death of the releasees, their heir at law, the plaintiff, cannot maintain any suit thereon. It is familiar law that the covenant to defend cannot enlarge the premises conveyed or released.

The construction of the agreement being as contended by the defendants in the first suit, both bills must, under the provisions of the report, be dismissed.             *Bills dismissed.*