# MARGARET E. SMITH, EXECUTRIX, *vs.* ELIZA ANN C. SMITH.

*Erroneous Recital in Will as to Ownership of Property—Implication of Gift—Election Under Will—Charge Against Legatee for Support.*

When a testator erroneously states in his will that A. is or will be entitled to certain property under another instrument or deed, there can be no implication of a bequest, and the other devisees under the will are not put to an election, although it appears that on account of his mistake as to its ownership, the testator did not bequeath that property to A.

But if a testator erroneously states that he has by the will given certain property, when he has not effectually done so, such recital will be taken as sufficient evidence and expression of his intention to give by will and the bequest will be implied.

A testator stated in his will that his two children by his first marriage would receive under and by virtue of a designated policy of insurance on his life a certain sum of money, and then he directed that a like sum should be set apart out of his estate and invested for the benefit of his second wife and his child by her. After that, he divided the residue of his estate among all his children. The policy of life insurance was in fact payable to the estate of the testator, and not to the two children. *Held,* that this recital is not a bequest of the proceeds of the policy.

*Held,* further, that the doctrine of election, according to which a party is not allowed to take a benefit under one provision of a will and at the same time defeat another provision, has no application in this case, because the other legatees do not defeat any provision of the will, there being in it no bequest of the proceeds of the policy of insurance.

In a codicil to his will, a testator stated that since its execution he had annually expended money for the maintenance of his

daughter Eliza Ann, and therefore he had determined to charge her with a certain sum annually, which should be deducted from the share of the estate bequeathed to her. *Held,* that this charge should be computed from the date of the codicil and not from the date of the execution of the will.

*Decided June 23rd, 1910.*

Appeal from the Circuit Court for Kent County (PEARCE, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS and URNER, JJ.

*Frank Gosnell* (with whom was *Hope H. Barroll* on the brief), for the appellant.

*Lewin W. Wickes,* for the appellee, submitted the cause on his brief.

THOMAS, J., delivered the opinion of the Court.

George W. Smith, of Kent County, Maryland, died in September, 1908, leaving a last will and testament and two codicils which were admitted to probate in the Orphans' Court of said county.

The testator was married twice. His first wife, Eliza Ann C. Smith, died in 1884, leaving two children, George Mifflin Smith, of Baltimore City, and Eliza Ann C. Smith, of Chestertown, Maryland. By his second wife, Margaret Emily Smith, he had one daughter, Margaret Slaughter Smith, who is still under age and resides with her mother in Chestertown.

The will, which was executed on the 13th day of March, 1901, after providing for the payment of his debts, and directing his executors to sell all his property, real and personal, "except specific bequests hereinafter named," provides as follows:

"Item. I hold in the New York Mutual Life Insurance Company a policy on my life of three thousand ($3,000.00) dollars, this policy is in favor of my first wife, Eliza Ann C. Smith, and of my two children by her namely: George Mifflin Smith and Eliza Ann C. Smith and this sum of money with the interest due thereon they will receive under and by virtue of said policy at my death; after all my estate is converted into cash I desire that the sum of three thousand ($3,000.00) dollars, from my estate (or such sum as the said policy may pay at the time of my death) shall be set apart and invested for the use and benefit of my present wife, Margaret Emily Smith and Margaret Slaughter Smith, my daughter, and to any other child or children we may hereafter have, the income of this sum of money to be invested and held in trust, and the same paid to my wife for and during her natural life, and after her death the same is to be invested and the income thereof is to be paid to such child or children as I may leave surviving me by my said wife, Margaret Emily Smith, and when they shall respectively arrive at the age of twenty-one years, the said sum of money is to be paid to them in equal sums, share and share alike."

"Item. After the sum of three thousand dollars ($3,-000.00) or the sum equivalent to the value of said Life Insurance Policy from the corpus of my estate is set apart for the use and benefit of my wife, Margaret Emily Smith, and of her said child or children, I devise and bequeath the residue of my estate to be divided as follows:

"One-third of my estate to my wife, Margaret Emily Smith, during her natural life, then to go to my heirs at law in such manner as I have hereafter devised their respective shares to them, two-ninths to my son. George Mifflin Smith, two-ninths to my daughter Margaret Slaughter Smith, and I direct that the remaining two-ninths shall be invested under the order and direction of the Circuit Court for Kent County, Maryland, and the income therefrom shall be paid

annually unto my daughter, Eliza Ann C. Smith, for and during the term of her natural life, and from and after her death I will and direct that the corpus shall be paid to such child or children as she may leave, the child or children of any deceased child to take a parent's share, but if my daughter, Eliza Ann C. Smith, should die without leaving any issue, then it is my will and I direct that the share so devised to her shall be equally divided among my other children share and share alike."

"Item. As it may be necessary for my wife, Margaret Emily Smith, my daughter Eliza Ann C. Smith and my son George Mifflin Smith to have immediate funds after my death, I direct my executors to pay to my said daughter and son each the sum of three hundred dollars ($300.00), payable in three, six and nine months after my death, and the sum of six hundred dollars ($600.00) to my wife and infant daughter, payable as aforesaid."

After giving his piano to his daughter Margaret; two tables, which he received from his first wife, to his daughter Eliza, and his watch and bedstead to his son, he gave all the "rest and residue" of his "household goods and furniture" to his wife for life, and after her death to his children, "to be divided equally among" them.

By a codicil, executed the 15th of January, 1906, the testator makes the following additional provision for his daughter Margaret:

"Before any division of my estate is made, I hereby bequeath the sum of eight hundred dollars ($800.00) unto my infant daughter Margaret Slaughter Smith, and I will and direct that same shall be kept intact as a trust fund until my said daughter shall arrive at the age of fifteen years, and then the same principal and interest shall be used for her education, and that no part of it shall be used for any other purpose until my said daughter shall arrive at the age of fifteen years."

He then revokes the provisions of his will requiring his executors to pay to his daughter Eliza and his son "each the sum of $300.00," and to his wife the sum of $600.00, and in lieu thereof, after repeating that it may be necessary for them to have immediate funds, directs his executors to pay to his son and said daughter "each the sum of $200.00," and to his wife and his daughter Margaret $400.00, in the manner as provided in his will. This codicil contains the further provision:

"And whereas since the date of the execution of my last will and testament I have annually laid out and expended the sum of at least two hundred ($200.00) dollars for board and maintenance of my daughter Eliza Ann C. Smith (who is more than twenty-one years of age), I have determined to charge her with the sum of seventy-five dollars annually, and whatever sum of this charge may be due at the time of my death shall be deducted from the share which my said daughter Eliza Ann C. Smith would receive under the provisions of my said will."

The second codicil was executed on the 13th of August, 1908, and provides that his wife shall be "sole executrix" of his will.

On the 20th of February, 1909, Eliza Ann C. Smith filed a bill of complaint in the Circuit Court for Kent County against her brother, sister and the executrix and widow, for a construction of the will and first codicil, and asking the Court to determine, first, "whether" the provisions of the will relating to the two-ninths directed to be invested for the benefit of Eliza Ann C. Smith for life, etc., "affects, includes or embraces the share or interest of Eliza Ann C. Smith in and to the policy of insurance on the life of George W. Smith or the proceeds thereof mentioned in the fourth item of said last will and testament, or whether the said Eliza Ann C. Smith is entitled to her share of the proceeds of said policy of insurance * * * absolutely and clear of the trust created for her portion, of her father's estate in the fifth item of said

last will and testament, and if so entitled clear of the trust so created, from what date her share of the proceeds bears interest"; and, second, "Whether the charge upon the share of the estate of Eliza Ann C. Smith of seventy-five dollars ($75.00) annually made in the first codicil to the last will and testament of the said George W. Smith begins from the date of said last will and testament, namely, the 13th day of March, 1901, or from the date of the said first codicil, namely, the 15th day of January, 1906."

The bill, which also contains a prayer for general relief, alleges that the policy "was made payable to his wife Eliza A. Smith or the insured's estate, and was taken out to secure the said Eliza C. Smith for a debt of $3,000.00 borrowed from her by the said George W. Smith"; that the proceeds of the policy amounted to the sum of $3,151.00, and that said sum was paid to the executrix on the 5th of November, 1908, and that George Mifflin Smith has received a portion of his share of the proceeds of the policy. The answer of George Mifflin Smith admits the facts alleged in the bill. Margaret E. Smith, executrix and widow, in her answer denies that the policy was taken out to secure a debt of $3,000.00 due testator's first wife, and that George Mifflin Smith has received a portion of his share of the proceeds of the policy, and alleges that $1,200.00 was advanced to him by her as a portion of his interest in the estate, with the understanding that the will would have to be construed by the Court. She admits the other averments of the bill. Margaret Slaughter Smith, infant, answered by guardian *ad litem;* a general replication was filed and evidence was taken, but the evidence was held to be inadmissible by the Court below, and is not in the record.

The bill and answers do not apparently question the right of the plaintiff and her brother under the will to the proceeds of the policy, but it appears that that was the principal question discussed and considered in the Court below, and it is the one to which the briefs and argument in this Court

were mainly directed. The bill, as we have said, alleges, and the answer of George Mifflin Smith admits, that the policy was made payable to "Eliza A. Smith or the insured's estate." The will recites that the policy was in favor of testator's first wife and his two children by her. It appears by an agreement of counsel for the plaintiff and the executrix, in the record, that the policy was, in fact, payable to the testator's first wife, Eliza A. Smith, "if living, and if not living then to the said George W. Smith or his executors, administrators or assigns." This agreement, however, was not filed, it seems, until after the decree of the Court below.

Whatever may have been the terms of the policy, the object and purpose of the bill is to obtain a construction of the *will,* and the question to be determined, in this connection, is, does it contain a valid bequest to the children of testator's first wife of the proceeds of the policy? That the testator intended them to have the benefit of his life insurance cannot be doubted, for all of the provisions of the will are evidently based upon the assumption that they would receive the $3,000.00, or whatever amount was realized on the policy. But that does not answer the question. The precise inquiry is, did he intend to give them the proceeds of the policy *by his will?* and its answer must be found in the terms of the will. The only parts of the will in which the policy is referred to are in these words: "I hold in the New York Mutual Life Insurance Company a policy on my life of three thousand ($3.000.00) dollars; this policy is in favor of my first wife Eliza Ann C. Smith, and of my two children by her, namely: George Mifflin Smith and Eliza Ann C. Smith, and this sum of money with the interest due thereon they will receive under and by virtue of said policy at my death; after all my estate is converted into cash I desire that the sum of three thousand ($3,000.00) dollars from my estate (or such sum as the said policy may pay at the time of my death) shall be set apart and invested for the use and benefit of my present wife, Margaret Emily Smith, and Margaret

Slaughter Smith, my daughter, and to any other child or children we may hereafter have," etc. "After the sum of three thousand dollars ($3,000.00) or the sum equivalent to the value of said life insurance policy from the corpus of my estate is set apart for the use and benefit of my wife, Margaret Emily Smith, and of her said child or children, I devise and bequeath the residue of my estate to be divided as follows:" Here there are not only no words of gift, but the testator expressly states that the policy was in favor of his first wife and her children, and that said children would receive the proceeds *"under and by virtue of said policy"* at his death. This language clearly shows that the testator did not regard the amount to be realized on the policy as a part of his estate, or attempt to dispose of it by his will, and that he treated the policy as a provision made for the children of his first wife outside and independent of his will. As he thought they would receive the amount of the policy *under and by virtue of the policy,* he could not have intended to give it to them by his will.

The recital in the will that the policy was in favor of or payable to his first wife and her children, and that her children would receive the proceeds under and by virtue of the policy, cannot operate as a bequest by implication. *Mr. Jarman* says: "Sometimes a testator shows by the recitals in his will that he erroneously supposes a title to subsist in a third person to property which, in fact, belongs to himself Such recitals do not generally amount to a devise; for, as the testator evidently conceives that the person referred to possesses a title independently of any act of his own, he does not intend to make an actual disposition in favor of such person; and though it may be probable, or even apparent, that the testator is influenced in the disposition of his property by this mistake, yet there is no necessary implication that, in the event of the failure of the supposed title, he would give to the person that benefit to which it is assumed he was entitled. It seems, however, that if a testator unequivocally

refer to a disposition as made in his will, which, in fact, he has not made, the intention to make such disposition, at all events, will be considered as sufficiently indicated.   In such cases 'the Court has taken the recital as conclusive evidence of an intention to give by the will, and, fastening upon it, has given the erroneous recital the effect of an actual gift,' differing, in this respect, from the cases in which 'the testator says that only which amounts to a declaration that he supposes that a party referred to has an interest independent of the will, and in which the recital is no evidence of an intention to give by the will, and cannot be treated as a gift by implication.' "   1 *Jarman on Wills* (6th ed.), star pp. 491-493.   The same principle is stated in 30 *Am. and Eng. Ency. of Law* (2nd ed.), 698, where it is said: "Where the recital is to the effect that the testator has made a gift in another part of the will, when in fact he has not done so, and therefore the recital turns out to be erroneous, such recital is construed to show a purpose and intention on the part of the testator to make such gift, which the Courts proceed to carry out by raising an estate by implication.   Where, however, the recital in the will is to the effect that the testator has, by some instrument other than the will, given property to a certain named person, when in fact he has not done so, such an erroneous recital does not disclose a purpose and intent on the part of the devisor to give by the will, and in such cases resort must be had to the other instrument, and not to the will, by persons interested."   In the case of *Adams v. Adams*, 1 Hare, 538, "a devise and bequest to trustees of real and personal estate, subject to the dower and thirds at common law of the testator's wife in and out of his real estates, upon trust to receive the income, and pay the same or the surplus thereof after deducting the dower or thirds of his said wife for the maintenance of his children," (1 *Jarman on Wills, supra*) was held (the interest of the testator in the real estate not being liable to dower) not to give the wife by implication an interest in the estate, and the VICE-

CHANCELLOR said: "I certainly think that this is a hard case upon the widow; but, whatever my opinion in that respect may be, I cannot make a provision for her which the testator has not directed. The question in all these cases is, whether the testator has actually made any gift; and the gift, if there be any, must be found either in express words or by implication. * * * Where, however, the testator says that only which amounts to a declaration, that he supposes that a party who is referred to has an interest independent of the will,—such a recital is no evidence of an intention to give by the will, and cannot be treated as a gift by implication."

In the case of *Box* v. *Barrett,* 3 L. R. Eq. 244, which was decided in 1866, the will recited: "Whereas, under the settlement made upon my marriage, my two daughters, Ellen and Emily, will become entitled to certain hereditaments, now in making this will, I have taken the same into consideration and have not devised unto them so large a share under this my will as I should have done had they not been so entitled as aforesaid." The testator had four daughters, and to his said daughters, Ellen and Emily, he devised certain estates, and gave to his other daughters estates of much greater value. Under the settlement *all* of the daughters were entitled equally. Proceedings were instituted for a construction of the will, and LORD ROMILLY, M. R., said: "I am of the opinion that no case of election arises here. There must be some disposition of property which the testator had no right to dispose of to make one. * * * In the present case there is nothing more than a recital of an intention under a belief which was erroneous, and thereupon the testator gives certain property in a particular way. If I were to hold that a case of election arises here, the most serious yet strange results would follow; for suppose a man recited in his will that his nephew would have a large fortune from his father, and, that therefore, he left all his property to his other nephew, and that recital turned out to be incorrect, would any question of election arise upon that, because the

supposed intention of the testator was that the property should be divided equally? The most that can be said of the recital in the case before me now, is that it is an erroneous one, but because the testator has made a mistake, you cannot afterwards remodel the will and make it that which he had known the incorrectness of his supposition. The you suppose he intended, and as he would have drawn it if will in this case must be taken as it stands. The result is that no question of election arises."

In the case of *Hunt* v. *Evans,* 134 Ill. 496, 25 N. E. 579, the will recited that the testator had conveyed certain property to trustees. The deed had not, in fact, been executed, and the Court, after stating the rule that "when the recital in the will is to the effect that the testator has, by some instrument other than the will, given to a certain person named in the recital property, when in truth and fact he has not done so, such a recital does not disclose a purpose and intent on the part of the devisor to give by the will," says: "Here the recital has no reference whatever to a gift or devise created by or under the will, but it refers to a deed of trust or instrument in no manner connected with the will. under which the title to the property passed, and, under the rule announced, reliance cannot be placed on the erroneous recital in the will to pass the title to the property to the persons named as trustees in that recital." To the same effect is the case of *Hurlbut* v. *Hutton,* 42 N. J. Eq. 15, 6 Atl. 286, but nowhere is the rule more clearly stated and more strictly applied than by this Court in *Zimmerman* v. *Hafer.* 81 Md. 347, where the parts of the will relied on were as follows:

"Whereas, I have this day made and executed a deed conveying to J. Monroe Zimmerman the farm whereon I now reside, I do hereby give and bequeath unto him, the said James Monroe Zimmerman, all my personal property of whatever description and wheresoever situate."

"I thus give to the said J. Monroe Zimmerman, all my property and estate because he is married to my niece, and I have been living with them for many years, and have a high regard and affection for them, and desire that they shall enjoy the same to the exclusion of my other relations."

JUDGE MCSHERRY, in that case, said: "It is perfectly obvious that the will makes no direct disposition of the real estate. It expressly recites that the testator had on the same day conveyed the farm to Zimmerman by deed, and it then proceeds to give him, not the farm, but personal property only. * * * But if the deed failed from any cause to convey the land, the mere expression in the will of a wish, that the donee should enjoy that which the testator then supposed he had given him by the deed, cannot operate as a direct devise of the land, or as a devise thereof by necessary implication, even though coupled with a declaration that he desired his other relations to be excluded from any participation in his estate. * * * This recital in the will was, or at least turned out to be, erroneous, because the deed did not convey the title, though it was actually made and executed. Such an erroneous recital does not disclose a purpose or intention on the part of the testator to give the same property by the will.

"The doctrine as to the effect of erroneous recitals in wills is well established, namely, that if the erroneous recital in a testamentary instrument be of a gift contained in this instrument, the recital may operate as being in itself a devise or bequest by implication of that very property. But where the erroneous recital refers to an estate created by another instrument, that recital cannot operate to create an estate by implication."

As was said in *Adams* v. *Adams, supra,* this is a hard case on the appellee and her brother, but in view of the rule so well established, and so clearly announced by this Court, we cannot hold that the recitals of the will in the case at bar operate as a bequest by implication of the proceeds of the policy to the children of the testator's first wife. Nor is this

a case for the application of the doctrine of election. It was said in *McElfresh* v. *Schley,* 2 Gill, 181: "From the earliest case on the subject, the rule is, that a man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument. If he claims an interest under the instrument, he must give full effect to it, as far as he is able to do so. He cannot take what is devised to him, and at the same time, what is devised to another; although, but for the will, it would be his; hence he is driven to his election to say, which he will take." This principle obviously has no application to this case. There is no attempt here to defeat the provisions of the will, for as we have said, the testator did not attempt to bequeath the proceeds of the policy. Moreover, the principle only applies where the testator by his will disposes of some interest or estate that does not belong to him. See also *Barbour* v. *Mitchell,* 40 Md. 151; *Albert* v. *Albert,* 68 Md. 352; *Hunt* v. *Evans, supra;* 2 *Story's Eq.,* (5th ed.), sec. 1086; *Bispham's Principles of Eq.* (3rd ed.), 361; *Box* v. *Barrett, supra.*

As the will contains no bequest of the proceeds of the policy to the plaintiff and her brother, the amount received by the executrix on account of the policy, if it belongs to the estate, passes under the residuary clause of the will, and the amount of the charge of seventy-five dollars annually against the share of the appellee, or so much thereof as was due at the death of the testator, should be deducted from the two-ninths of the residue of the estate bequeathed in trust for her and her children, etc.

The testator states in the first codicil that since the date of his will he has annually expended at least $200.00 "for board and maintenance of" his daughter, Eliza, and that, for that reason, he had determined to charge her with the sum of seventy-five dollars annually, and that "whatever sum of this charge may be due at the time" of his death must be deducted from her share of his estate. In respect to this provision of the codicil we adopt the view expressed

by the learned Court below, as follows: "The language 'I have determined to charge her with $75.00 annually,' etc., I think indicates a future purpose to impose a charge, and not to make it retroactive, and the charge should, therefore, be computed from the date of the codicil."

The amount to be deducted from her share of the estate is, therefore, so much of the charge of $75.00 annually, computed from the date of the codicil, as was due at the time of the testator's death, and if there is any uncertainty as to that amount evidence may be taken to establish it.

As the learned Court below decreed that Eliza Ann C. Smith and her brother, George Mifflin Smith, took under the will the proceeds of the policy to the exclusion of the other legatees, so much of that decree must be reversed, and that part of the decree which directs that the charge of $75.00 annually be computed from the date of the codicil and that the amount of said charge be deducted from the two-ninth of the residue of the estate bequeathed in trust for the appellee and her children, etc., will be affirmed, with the modifications suggested, and the cause must be remanded in order that a decree may be passed in accordance with this opinion.

> *Decree reversed in part and affirmed in part, and cause remanded, the costs in the Court below and in this Court to be paid by Margaret Emily Smith. Executrix, out of the testator's estate.*