# PORTER *v.* THE UNION TRUST COMPANY ET AL.

### [No. 22,483. Filed January 20, 1915.]

1. WILLS.—*Construction.—Intent of Testator.*—The intent of the testator must be sought from a consideration of the whole will in the light, if any, of the surrounding circumstances.  p. 642.

2. WILLS.—*Construction.*—If possible, effect must be given to every word or clause of a will and its apparently conflicting provisions must be reconciled, and that construction giving effect to the will as a whole, and which does not involve an intention to make an unlawful gift, must be adopted rather than a possible one involving the disregard of a word or a clause, or which would assume that the testator intended an unlawful gift.  p. 642.

3. WILLS.—*Construction.—Partial Intestacy.*—In construing a will, partial intestacy will be avoided unless a contrary intention clearly appears.  p. 642.

4. WILLS. — *Construction. — Repugnant Clauses.* — Where two clauses of a will are equally specific and clearly repugnant the latter controls, but when the effect of the later gift is to enlarge the former there is no repugnancy.  p. 642.

5. WILLS.—*Construction.—Specific Language.—Gifts by Implication.*—While specific language in a will generally controls that of a general nature, and gifts by implication are not favored, where the intention to make a supposed gift clearly appears from a consideration of the language of the whole will, such intention must be given effect although not expressed by direct language.  p. 642.

6. WILLS.—*Construction.—Bequests.*—A bequest may be implied from an erroneous recital in a will.  p. 643.

7. WILLS.—*Construction.—Interest Devised.*—Where, at the time of making his will, two of testator's three daughters, who were his only children, were married, while the youngest was still a small child, and testator devised and bequeathed all his property to a trustee, with directions that the trustee should collect the income and out of the net proceeds pay to his wife $300 per month, and, in case of emergency or insufficiency of the income, to use from the principal for such purpose, and expressed in the will his confidence that his wife would maintain the youngest daughter, and there was no intimation therein that testator intended the daughters to share in the property during the life of their mother, but, on the other hand, expressed in the last clause the testator's wish that the wife during her life should have the entire benefit of the estate, it must be deemed, in view of §9724

Burns 1914, 2 R. S. 1852 p. 245, relating to provisions for the accumulation of ·personal property, that he intended the wife to receive all the income even though it greatly exceeded $300 per month.  pp. 643, 644.

8.  CONVERSION.—*What Constitutes.*—A devise of lands, to trustees with full power to sell and invest the proceeds in personalty does not effect an equitable conversion on the death of testator, but a subsequent exercise of the power would operate as a conversion when the realty is sold.  p. 644.

9.  WILLS.—*Right to Transmit by Devise.*—The right to dispose of property by will is a creature of the statute, and consequently may be limited by the State as it sees fit.  p. 644.

From Probate Court of Marion County (685) ; *Frank B. Ross,* Judge.

Action by Carrie R. Porter against The Union Trust Company and others.  From an adverse judgment, the plaintiff appeals.  *Reversed.*

*Elmer E. Stevenson,* for appellant.

*Miller, Shirley, Miller & Thompson,* for appellees.

MORRIS, J.—Suit by appellant, widow of Edward B. Porter, deceased, against appellee Union Trust Company, as executor and trustee, and three daughters of appellant and decedent, as legatees and devisees.  The complaint sought a construction of the will.  Certain facts were alleged and proven, showing the conditions surrounding testator when the will was executed.  Issues were formed and a trial had resulting in a finding and judgment for appellees.  Error is assigned in the overruling of appellant's motion for a new trial, which was grounded on the insufficiency, in fact and law, of the evidence to support the court's decision. The record discloses no controversy of fact.  The will was executed in 1902.  The first item provides for the payment of debts and funeral expenses.  The second gives the widow the household furniture, library and other chattels.  The remainder of the will, relating to the disposition of the estate, reads as follows:

"Item.  Third.  All the rest and residue of my estate of which I may be possessed at the time of my death, real,

personal or mixed and wherever situated, I give, devise and bequeath to The Union Trust Company of Indianapolis, Indiana, as trustee; said trustee shall take and hold the same however for the purposes hereinafter named, with the rights and powers and subject to the liabilities following, that is to say. My said trustee shall have full and absolute power in its own discretion to sell, assign, pledge, mortgage or convey any or all of my estate coming into its hands when in its discretion it is advisable or necessary for the purpose of changing investments or borrowing money or otherwise carrying out the purposes of this trust; and it shall have like power in respect to any other property which it may thereafter become possessed of by purchase or otherwise as a part of the trust estate held by it under the terms of this will. And in making any such transfer or conveyance it shall be guided solely by its own discretion and shall have full power and authority to execute proper instruments of conveyance without procuring the consent to or subsequent approval of the same by any court or by any other person whatsoever. It shall have full power to and shall be charged with the duty of managing all such property as may come into its hands, collect the rents and income therefrom and paying all taxes, assessments insurance premiums and such other items of expense as may be a proper charge against the same. Said trustee shall out of the net income of my estate pay to my said wife the sum of $3,600 per annum, payable in equal monthly installments on or about the first of each calendar month. And in event the net income payment of charges from my estate shall be insufficient in any year to make such payment to my said wife, then said trustee shall out of the principal of my estate make good any such shortage in the income. And by the foregoing I mean to.say that it is my desire that my said wife shall have a fixed income of $300 per month irrespective of whether the income of my estate in the hands of said trustee produces said amount or not. And moreover it is my wish and my will that in event any extraordinary sickness or calamity should overtake my said wife, so that in the discretion of my said trustee said sum of $300 per month is insufficient to defray the expenses which may have to be incurred, it is authorized to pay such additional sum over and above the provision herein made as may be necessary to give my said wife every necessity, comfort, or convenience which she may desire during the con-

tinuance of any such unfortunate situation. It is also my wish and my will that my wife shall have the option of continuing to reside in the residence occupied by us at the time of my death without payment of any rent so long as she may desire or until my said trustee shall find it desirable in the management of the trust hereby created to sell the same; and in event she shall desire to live elsewhere or in event my said trustee shall sell the same, then said trustee shall pay to her an additional sum of $400 per year payable in equal monthly installments to take the place of said residence hereinabove provided for her. Upon the death of my said wife, said trustee shall divide my estate or so much thereof as may be then on hand and distribute the same in equal parts among my three children, Kate Porter Varney, Eleanor Porter Jelleff and Ann V. Porter, and in event any of my said children shall be then dead, leaving child or children them surviving, such child or children shall be entitled to the portion which its parent would have received if living. Item Fourth. My daughter Ann V. Porter, being now only thirteen years of age, she will necessarily need provision made for her support and education for a number of years to come, and while I do not mean to make the same compulsory upon my wife, yet it is my wish, desire and expectation that out of the provision hereinbefore made for my wife, she will be able to and will defray the expense of our said daughter's support and education, in case at the time of my death she is dependent upon her parents for support. In making the foregoing provisions for my beloved wife, my sole desire has been to give to her the entire benefit of my estate during her lifetime and at the same time to relieve her altogether of any worry, care or risk in connection with the management thereof, and I felt that it would be far better for her to be relieved of all responsibility in the management of my property and left with a fixed income entirely ample to meet her wants. Item Fifth. I hereby nominate and appoint The Union Trust Company of Indianapolis, executor of this my last will and testament.''

Testator and appellant were married when she was quite young. When the will was executed she was forty-six years old, and at that time they had two married daughters, appellees Kate Porter Varney and Eleanor Porter Jelleff. The

third child, appellee Anne V. Porter (now Pangborn) was then thirteen years old. She was married after testator's death. The three daughters were the only children of appellant and testator. He was a banker long before and after he made his will and received a salary as cashier of the Indiana National Bank ranging from $3,000 to $4,000 per annum. When the will was executed he owned property worth $60,000 from which he derived an annual net income of $3,500 to $4,000. He owned the residence where the family then resided. Testator died in October, 1909. He ceased working in the bank a year before his death because of ill health. Three or four years after the will was executed he came in possession of property worth $70,000, derived from the estate of his father, Governor Albert G. Porter. It is probable that this estate vested in testator before the will in controversy was executed, though the evidence thereof is somewhat indefinite. At about the same time he also came in possession of property inherited from deceased brothers which was of the value of $32,000. After the will was executed testator made improvements on certain Indianapolis real estate that increased the rentals therefrom many fold. Since 1908 the average annual net income from the estate has been about $7,200, about $2,800 of which accrued from the personal estate. Appellee Union Trust Company qualified as executor and also as trustee. All of decedent's debts have been paid. The annual living expenses of testator's family ranged from $3,000 in 1897 to $6,000 in 1908. Appellant lives in the family residence occupied by testator when he died. No calamity nor extraordinary sickness has overtaken appellant. After the decedent's debts were all paid, appellee trust company, at first paid to appellant all the net annual income, but subsequently, on legal advice, refused to pay her more than $3,600 per annum unless on order of the probate court in an action to construe the will. Because of such refusal this action was instituted.

Appellant contends that the will evinces the testator's intention to give her the entire net annual income of the whole estate during her life; that the fixed income of $300 per month was intended as her minimum income regardless of earnings. Counsel for appellees insist that notwithstanding the clause "In making the foregoing provisions for my beloved wife, my sole desire has been to give her the entire benefit of my estate during her lifetime", it must be held, under well recognized rules of construction, that appellant, *under the facts disclosed, is entitled only to a fixed income of $3,600 per annum, payable in monthly installments of $300.* That the will contains ambiguities, and therefore requires the application of rules of construction, is conceded. Nor is there any controversy about the existence of the rules we will notice. The dispute turns on the application, or the extent thereof, to the subject-matter.

The intent of the testator must be sought by a consideration of the entire will, in the light, if any, of the surroundings disclosed by the parol evidence admitted. Effect must be given every word or clause, if possible, and provisions apparently conflicting must be reconciled if such result be rationally attainable. Where two constructions are suggested, the one disregarding a word or clause of a will, and the other giving effect to a will as a whole, the latter must be adopted. Where one proposed construction of an ambiguous provision assumes an intention to make an unlawful gift, while another does not, the latter will be accepted, if possible without doing violence to the testator's purpose. Partial intestacy will be avoided, unless a contrary intention clearly appears. Where two clauses are equally specific and clearly repugnant the latter controls, but when the effect of the later gift is merely to enlarge the former, there is no repugnancy. Page, Wills §469. Specific language generally controls that of a general nature. *Cleveland, etc., R. Co.* v. *Blind* (1914),

*ante* 398, 105 N. E. 483, 491. Gifts by implication are not favored, but where àn intention to make a supposed gift clearly appears from a consideration of the entire will the intention must be given effect although not expressed by direct language. Case note to *Connor* v. *Gardner* (1907), 15 L. R. A. (N. S.) 73. Of course such implication must be grounded on language found in the will, and not on conjecture, and the implied intent may not affect property otherwise expressly bequeathed. *Kelly* v. *Stinson* (1847), 8 Blackf. 387. A bequest may be implied from an erroneous recital. Where a will recites a specific provision to a designated person as previously made therein, such recital though incorrectly, but nevertheless clearly showing the testator's intention to make such disposition, a gift is implied. 1 Jarman, Wills (6th ed.) 491-493; Page, Wills §468; 40 Cyc. 1391; 30 Am. and Eng. Ency. Law (2d ed.) 698; *Hawes* v. *Kepley* (1902), 28 Ind. App. 306, 310, 62 N. E. 720. However, no gift by implication arises from an erroneous recital in reference to a disposition by an instrument other than the will. *Smith* v. *Smith* (1910), 113 Md. 495, 77 Atl. 975, 31 L. R. A. (N. S.) 922, 140 Am. St. 435.

6.

When the will in question was executed the testator must have contemplated that the annual net income of the estate might exceed $3,600, and that his wife, then 46 years old, might possibly live for half a century. Before he died he evidently knew that the average annual income was greatly in excess of $3,600. There is no direct gift of the excess income over $3,600 (aside from the ones contingent on calamity, extraordinary illness or removal from the homestead) and yet it could not rationally be held that testator intended to die intestate as to any of his property. Consequently the testator must have intended by the will to bequeath such excess income either to his wife, or to his three daughters "in equal parts". But it is equally clear that he did not intend that his married daughters at

7.

least, should come into the enjoyment of his bounty to any extent, until after appellant's death; nor that even the younger one should to any extent, unless appellant, contrary to his expectation and desire might fail to furnish the means necessary to her support and education during the possible time of her dependence. Even the intention that the youngest daughter might in any contingency look to the trustee, instead of the mother, for support and education during the years of her possible dependence, must appear by implication, if at all, for it is not expressed. The bequest to the three daughters appears in the last clause of the third item, and provides for the division and distribution of the remaining estate to them "upon the death of my said wife". If, therefore, appellees' theory be correct it must have been the testator's purpose for the excess annual income above the sum of $3,600 to accumulate from year to year during the possibly long period that appellant might live. The testator realized that after his death the entire income might arise from personal property, for he clearly gives the trustee untrammelled authority to convert the real estate into personal property. True as counsel for appellees contend, no equitable conversion resulted at testator's death because of such authority, but the subsequent exercise thereof by the trustee would operate as a conversion whenever the realty might be sold. The will vests the trustee with unlimited discretion in the matter, of sale and reinvestment, but if a concededly better one might be made by changing from realty to personality the trustee would be morally bound to make the change. The right to dispose of property by will is a creature of statute, and consequently the State may limit the right as it sees fit. *Donaldson* v. *State, ex rel.* (1915), *ante* 615, 101 N. E. 485. In Indiana, a testamentary provision for the accumulation of income from personalty, to commence at testator's death, is void unless for the benefit of a minor, and to terminate with the

expiration of the minority. 2 R. S. 1852 p. 245, §9724 Burns 1914. The origin of this limitation is traceable to the will of an English merchant who died in 1797. This will devised property worth about $3,000,000 to trustees, to accumulate the income during the lives of all his sons, grand sons and grandson's children living at his death, and then, at the death of the survivor, to transfer the property to the three living, oldest, male descendants of his three sons, and failing them to the Crown of England for the sinking fund. It was then estimated that the trust might last for 75 years and with most skillful management, the total accumulation could reach $125,000,000. It was held, however, that the trust did not conflict with the then existing rule against perpetuities. *Thellusson* v. *Woodford* (1798), 4 Ves. 227. The danger to public interests of such possible accumulations caused Parliament to promptly enact the law of 39 and 40 Geo. III, Ch. 98, popularly called the Thellusson Act, and our statute (§9724 Burns 1914, *supra*) is the outgrowth of that legislation.

When testator died his youngest daughter was twenty years old. The theory of appellees' counsel involves the intent of the testator to make a disposition that might violate the law in relation to accumulated income from personalty, and such intent should not be imputed, if from the whole will there may rationally be inferred a purpose on testator's part to make a disposition that would not conflict with such law.

Counsel for appellees call our attention to the provision that requires the payment of $3,600 "out of the net income," which, they claim, implies an intent not to bequeath the entire income to appellant. They also point out the provision in regard to "fixed income", and call our attention to the evidence which shows that before any of the daughters were married the entire family expenses did not exceed $300 per month. It may be conceded that were it not for the recital that in the foregoing provisions for appel-

lant it was the testator's desire "to give to her the entire benefit" of the estate during her life, the position of counsel for appellees could not well be assailed even though it resulted in partial intestacy. But the recital has the effect of clearly showing a purpose to give her the entire income and the duty devolves on this court of reconciling the apparent inconsistency if reasonably possible. Viewing the will as a whole, in the light of the testator's surroundings, we are constrained to hold that such reconcilation is feasible. The will reveals the testator's tender affection for the wife of his youth, and evinces a watchful care for her future welfare and comfort, and we are of the opinion that the provision in relation to a fixed income was intended by the testator as a minimum one, and that it was his purpose, in any event, to give her each year the entire net income of the estate. This conclusion avoids any possibility of partial intestacy, and in our judgment gives effect to his real intention, though such purpose was not expressed in apt language.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 108 N. E. 117. As to rule that wills are to be construed more liberally than deeds, see Ann. Cas. 1913 E 1286. As to application of extrinsic evidence to aid in the interpretation of wills, see 46 Am. Rep. 72; 50 Am. St. 279. For the rule that intention of testator governs interpretation of will, see 7 L. Ed. U. S. 309. On the question of conversion by directing sale after devising land, see 39 L. R. A. (N. S.) 817. As to bequests or devises by implication, see 15 L. R. A. (N. S.) 73 See, also, under (1) 40 Cyc. 1413, 1431; (2) 40 Cyc. 1416; (3) 40 Cyc. 1409; (4) 40 Cyc. 1417; (5, 6) 40 Cyc. 1390; (7) 40 Cyc. 1413; (8) 9 Cyc. 839; (9) 40 Cyc. 997.