ESTATE OF ROSSMAN R. SAWYER, DECEASED, NORTHERN INDIANA BANK AND TRUST COMPANY, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Sawyer v. Commissioner
Docket No. 42775-85.
United States Tax Court
T.C. Memo 1988-132; 1988 Tax Ct. Memo LEXIS 160; 55 T.C.M. (CCH) 492; T.C.M. (RIA) 88132; March 28, 1988; As amended March 28, 1988 Joel Yonover, for the petitioner. James S. Stanis, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 79,204.55 in petitioner's Federal estate tax. After concessions, the issue for decision is whether petitioner is entitled to a marital deduction attributable to decedent's marital trust. Resolution of this issue turns on whether parol evidence proffered by petitioner is admissible for purposes of construing the trust instrument, and if so, whether the instrument should be construed so as to permit funding of the marital trust. FINDINGS OF FACT Some of the facts in this case are stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Rossman R. Sawyer (decedent died December 13, 1981, a resident of Valparaiso, Indiana. Decedent was survived by his wife Beulah *162 Sawyer (Mrs. Sawyer) and no children. Pursuant to decedent's will, the Porter County (Indiana) Superior Court appointed as executor the Northern Indiana Bank and Trust Company (the Bank or Executor) on January 12, 1982. In November 1976 decedent and Mrs Sawyer consulted James Sullivan (Sullivan), a Valparaiso attorney, regarding the planning of their estate. At that time decedent owned a 160-acre farm (the farm) in Newton County, Indiana. He inherited the farm from his brother, who died intestate in 1973 without a widow or children. The farm had been owned by members of decedent's family for almost 100 years. After the initial consultation, Sullivan's office prepared and sent to decedent drafts of a will and trust instrument, which decedent read and rejected. Sullivan's office redrafted the will and trust instrument, and on January 5, 1977, decedent executed the revised instruments. The will provided in relevant part as follows: ITEM I
All expenses of administering my estate and all estate, inheritance transfer, legacy or succession taxes, or death duties, which may be assessed or imposed with respect to my estate, or any part thereof, wheresoever situated, whether *163 or not passing under my Will, including the taxable value of all policies of insurance on my life and of all transfers, powers, rights or interests includible in my estate for the purposes of such taxes and duties, shall be paid out of my residuary estate as an expense of administration and without apportionment, and shall not be prorated or charged against any of the other gifts in this Will or against property not passing under this will. ITEM II
I bequeath all my personal and household effects and the like not effectively disposed of otherwise, such as clothing, furniture, furnishings, silver, books, pictures, automobiles (including policies of insurance thereon, if feasible) to my wife, Beulah L. Sawyer * * *. ITEM III
I devise and bequeath all my residuary estate, being all property, real or personal, wherever situated, in which I may have any interest at the time of my death, not otherwise effectively disposed of, to the Trustee under the Trust Agreement dated the 5th day of January, 1977, between me as Grantor, and the Northern Indiana Bank and Trust Company of Valparaiso, Indiana, as Trustee, to be added to and commingled with the trust property of that trust *164 and held and distributed, in whole or in part, as if it had been a part thereof immediately before my death, in accordance with the provisions of that Agreement and any amendments made to it pursuant to its terms before my death. It is my intention that my farm, * * * be distributed to the said Trustee, pursuant to this item. I, therefore, direct my Executor to so distribute my farm and not to sell it. The trust instrument, pursuant to which decedent was grantor and the Bank was trustee, provided in relevant part as follows: ARTICLE II
* * * 3. Notwithstanding anything herein to the contrary, so long as the GRANTORR is able to act, the GRANTOR shall have sole responsibility with respect to the retention and management of any real estate held by the TRUSTEE, including its maintenance, occupancy and insurance and the payment of taxes on it, and the TRUSTEE shall deal with the real estate only to the extent that the GRANTOR directs in writing. No TRUSTEE shall be accountable for any loss sustained by reason of any action taken or omitted pursuant to the provisions of this paragraph, and no person dealing with the TRUSTEE need inquire whether or not the provisions of the *165 paragraph have been complied with. * * * ARTICLE V
On the death of the GRANTOR, if the GRANTOR'S wife survives the GRANTOR, the TRUSTEE shall place the GRANTOR'S farm, * * * in a separate trust to be known as Trust A, to be held and disposed of with any other assets allocated to Trust A, upon the following terms: 1. During the period, if any, when the GRANTOR'S wife survives the GRANTOR, the TRUSTEE shall use the net income from Trust A for the health, welfare and support of the GRANTOR'S wife. * * * In addition, the TRUSTEE is also authorized to use such sums from the principal of Trust A for said purposes as it deems in the best interests of the beneficiary. * * * 2. Upon the death of the GRANTOR'S wife after the GRANTOR'S death, the TRUSTEE shall distribute the GRANTOR'S farm to the GRANTOR'S cousin, Ray Corbett, if he is living at that time, and if he is not then living, to his descendants, per stirpes. If Trust A contains assets other than the GRANTOR'S farm at the time of the GRANTOR'S death, upon the death of the GRANTOR'S wife, the Trustee shall distribute such other assets to the Lutheran University Association, an Indiana corporation, for the uses of Valparaiso *166 University, Valparaiso, Indiana. 3. Notwithstanding anything herein to the contrary, the GRANTOR directs the TRUSTEE to retain title to the GRANTOR'S farm so that it will be available for distribution to Ray Corbett pursuant to the terms of this Article. * * * ARTICLE VI
On the death of the GRANTOR, if the GRANTOR'S wife survives the GRANTOR, the TRUSTEE shall set aside as a separate Trust, to be known as "Trust B," an amount equal to the maximum estate tax material deduction allowable on determining the Federal estate tax on the GRANTOR'S estate for Federal estate tax purposes, less the value for Federal estate tax purposes of all other items which pass or have passed to the GRANTOR'S wife, other than the trust property, but only to such extent that such items are included in the GRANTOR'S gross estate and are allowable as a marital deduction for Federal estate tax purposes. In making the computations necessary to determine the amount of said TRUST B, the final determination for Federal estate tax purposes shall control. Any additional assets held by the TRUSTEE pursuant to this trust shall be allocated to Trust A, hereunder, and held and distributed pursuant to the *167 terms of Trust A. The GRANTOR understands that assets held by the TRUSTEE may be insufficient to fund Trust B fully pursuant to the foregoing paragraph if the GRANTOR'S farm is held in Trust A. In that event, the amount described in the preceding paragraph shall be reduced such that the GRANTOR'S farm is held in Trust A and the remainder of the trust assets are held as Trust B. On January 14, 1977, Mr. Sawyer conveyed the farm's legal title to Northern Indiana Bank to be held by the trust. As a result of Mr. Sawyer's death, joint tenancy property totaling $ 61,755.79 passed by operation of law to Mrs. Sawyer as the surviving joint tenant. Mrs. Sawyer also elected to receive a surviving spouse's allowance of $ 8,500 and received life insurance proceeds of $ 3,179.73. On January 14, 1982, Mr. Sawyer's will was admitted to probate. Assets totaling in value $ 216,569 became subject to administration in the probate proceedings and were disposed of under the terms of Mr. Sawyer's will. The probate inventory did not include any interest in the farm or trust. Prior to filing petitioner's Federal estate tax return, Executor determined that, under the express terms of the trust *168 instrument and will, the value of residuary assets pouring into Trust B (the marital trust) would not be sufficient to produce the maximum marital deduction, i.e., 50 percent of the value of the adjusted gross estate. In order to achieve this result, however, Executor created a liability against Trust A (or the nonmarital trust), which held the farm, to the marital trust, thereby adjusting the values of the trusts. On September 13, 1982, Executor filed a Federal estate tax return on behalf of petitioner. Executor amended the return on November 2, 1982. As amended, the return reported an adjusted gross estate of $ 556,231 and a marital deduction of 50 percent of the adjusted gross estate, or $ 278,116. As of the time of trial, the sum of expensed of administration, debts, and death taxes, including all amounts previously paid and all additional expenses and taxes which were to be paid and all additional expenses and taxes which were to be paid as a result of examinations of the Federal estate tax return and Indiana inheritance tax return, exceeded the value of the assets administered in the probate proceedings. As of the date of trial, no Indiana court had construed or interpreted *169 the terms of the will or trust or ruled upon its validity. In his notice of deficiency, respondent reduced petitioner's marital deduction to $ 73, 435.52, representing the total value of joint tenancy property, surviving spouse's allowance, and life insurance proceeds passing to Mrs. Sawyer as a result of decedent's death. OPINION Section 2056[1] allows a Federal estate tax "marital deduction" from a decedent's gross estate for the value of property interests passing from the decedent to the surviving spouse. Section 2056(c) provided an upper dollar limit to the marital deduction of (i) $ 250,000 or (ii) 50 percent of the value of the adjusted gross estate, whichever is larger. For purposes of computing the marital deduction, the valuation of property passing to the surviving spouse is to be made as of the time of the decedent's death. Section 20.2056(b)-4(a), Estate Tax Regs.; Estate of Reid v. Commissioner T.C. (Feb. 22, 1988). The dispute in this case *170 principally concerns whether decedent's trust instrument should be reformed or otherwise interpreted in light of parol evidence so as to afford petitioner, by the funding of decedent's marital trust, a resulting marital deduction. Petitioner argues that it is entitled to the maximum marital deduction on three alternative grounds. First, petitioner argues that decedent executed the trust instrument with the paramount intent to achieve the maximum marital deduction, not to pass title to the farm to a collateral relative. It asserts that the trust instrument, however, is "ambiguous" in this respect. Petitioner contends that parol evidence is both admissible and demonstrative as to decedent's intent to achieve the maximum marital deduction. Petitioner seeks to prove decedent's intent by testimony of the draftsman of the instrument and of the surviving spouse. petitioner further contends that, in light of the Bank's authority under the trust instrument to invade the principal of the nonmarital trust for Mrs. Sawyer's benefit, the Bank may properly create a liability, or equitable charge, between the nonmarital and marital trusts in order to effectuate decedent's intent. Second, petitioner *171 argues that decedent executed the trust instrument with the intention of creating a land trust [2] and that insofar as this intention is not clear it is attributable to ambiguous drafting or scrivener's error. Again, petitioner asserts that parol evidence is admissible and demonstrative of decedent's intent to create a land trust, and that the trust should be construed to this effect. The evidence proffered by petitioner consists of the testimony of the draftsman and the conduct of the trustee. Petitioner asserts that, under land trust law, decedent's beneficial interest in the trust constituted personal property which passed through his residuary estate; thus, the beneficial interest absorbed administrative expenses and death taxes that were payable out of the residuary estate and freed residuary marital property to pour into the marital trust. Petitioner asserts that if we determine that decedent failed to create a land trust, the deed by which decedent transferred the farm must also fail because decedent intended to create a land trust. In this event the farm would have passed through decedent's residuary estate, thereby absorbing administrative expenses and taxes. *172 Third, petitioner argues that, if the proffered parol evidence is inadmissible, the intent of decedent can still be determined by reading the will and trust instrument together, which interpretation, by normal rules of construction, would require application of the maximum marital deduction with a concomitant equitable charge against the nonmarital trust. Respondent argues that petitioner is not entitled to any marital deduction emanating from the marital trust because the value of the residuary assets was entirely absorbed by payment of administrative expenses and death taxes; thus, the value of residuary assets pouring into the marital trust is zero. Respondent further argues that the trust instrument clearly and unambiguously provided (1) that achievement of the maximum marital deduction was subject to decedent's overriding intent to preserve the unencumbered title to the farm, thus precluding use of the equitable charge for purposes of funding the marital trust; and (2) the trust created by decedent was a standard inter vivos trust, not a land trust, and as such decedent's interest in the trust passed nonprobate rather than under the will's residuary clause. Thus, respondent *173 argues that the parol evidence proffered by petitioner is inadmissible for purposes of construing or interpreting the trust instrument. In Estate of Craft v. Commissioner,68 T.C. 249 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979), we examined the two approaches this Court has taken in applying the parol evidence rule. In that decision we concluded that the application of the rule differs according to the nature of the inquiry. In numerous cases, particularly where we are concerned with the proper allocation (or character) of amounts paid under a contract, we have applied the "third-party to the instrument" rule. Thus, because the Commissioner was not a party to the instrument, neither he nor the taxpayer may rely on the rule to exclude extrinsic evidence offered by the other. Estate of Craft v. Commissioner,68 T.C. at 260, and cases cited therein. However, in instances where we must make a state law determination as to the existence and extent of legal rights and interests created by a written instrument, particularly in cases *174 involving the construction of the terms of a will or trust, we look to that state's parol evidence rule in deciding whether or not to exclude extrinsic evidence concerning those rights and interests. Estate of Craft v. Commissioner,68 T.C. at 263. Here, we are concerned with the existence and extent of property interests passing to Mrs. Sawyer in the form of marital property held in trust. Therefore, we must look to Indiana law in deciding whether or not to exclude the extrinsic evidence proffered by petitioner. Under Indiana law the intention of the settlor generally governs the construction and interpretation of trust instruments. Hauck v. Second National Bank of Richmond,153 Ind. App. 245, 286 N.E.2d 852, 861 (1972). In ascertaining this intent, Indiana courts have adopted the so-called "four corners" rule; that is, the intention of the settlor must be determined within the four corners of the instrument unless the provisions of that instrument are ambiguous. The logical extension of this rule of construction is Indiana's parol evidence rule, which *175 provides that "extrinsic evidence is inadmissible to expand, vary or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress, or undue influence." Turnpaugh v. Wolf,482 N.E.2d 506, 508 (Ind. App. 1985); Hauck v. Second National Bank of Richmond,286 N.E.2d at 861. A written instrument is ambiguous if it is reasonably susceptible of different constructions. Conversely, if a written instrument is so worded that it can be given a certain or definite meaning or interpretation, it is not ambiguous. Even where an apparent ambiguity exists, if it can be reconciled from a reasonable interpretation of the instrument, extrinsic evidence should not be admitted. Hauck v. Second National Bank of Richmond,286 N.E.2d at 861. In interpreting the terms of a dispositive instrument, specific language controls that of a general nature. See, e.g., Porter v. Union Trust Co. of Indianapolis,182 Ind. 637, 108 N.E. 117 (1915) (relating to wills). We reject petitioner's assertion that the *176 trust instrument is reasonably susceptible of an interpretation that achievement of the maximum marital deduction, i.e., 50 percent of the adjusted gross estate, was decedent's paramount intent. Although the trust instrument was drafted to permit optimal use of the marital deduction to the extent marital property was available, the second paragraph of Article VI gives priority to the decedent's intent that the farm be distributed to Ray Corbett, as specifically stated in Article V, paragraph 3. The trust instrument provides that the farm was to be allocated to the nonmarital trust, even though this might result in an underfunded marital deduction. The language is not "legalese" likely to be overlooked by decedent, who had read and rejected prior drafts of the will and trust instrument. Rather, it indicates that decedent understood this possibility and nonetheless authorized the possible underfunding. Because the trust instrument is not ambiguous, we cannot consider extrinsic evidence that would vary the terms of the trust. In this case petitioner seeks to directly contradict the trust instrument -- a prohibited use of parol evidence in virtually all jurisdictions. See, e. *177 g., Scott, Law of Trusts, sec. 38 (3d ed. 1967). The Bank's creation of an equitable charge against the farm or nonmarital trust is not required by the terms of the trust and in this case amounts to a post-mortem effort to fund the trust instrument and will together. Nothing in the will contradicts the express language of the trust with respect to the farm. We need not discuss the merits of petitioner's argument that the trust instrument is ambiguous with regard to the type of trust it creates and that in light of parol evidence it should be interpreted as creating a land trust. Even if we characterized the trust as a land trust, the critical issue before us -- the issue of whether decedent's beneficial interest in the land trust constituted a residuary asset under the will, so as to absorb administrative expenses and death taxes -- remains unproved. A beneficial interest in a land trust may pass probate or nonprobate, depending upon the devolution provisions, or lack thereof, of the trust agreement. Kenoe, Land Trust Practice secs. 3.8, 6.49 (1974). Although petitioner asserts that under *178 Indiana law decedent's beneficial interest would, as personal property, constitute a residuary asset under his will, petitioner provides no legal authority or analysis in support of this assertion. Finally, petitioner does not explain why the beneficial interest was not inventoried as personal property in the estate's probate proceedings. For the foregoing reasons, we agree with respondent that, for purposes of determining petitioner's marital deduction, the value of marital property allocable to decedent's marital trust from the residuary estate is zero, and petitioner is not entitled to fund the marital trust by an equitable charge. Thus, petitioner is not entitled to any marital deduction attributable to the marital trust. We have carefully considered the other arguments of each party and conclude that they are either unpersuasive or unnecessary for resolution of the issues of this case. [Text Deleted by Court Emendation] Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect at the date of decedent's death. ↩
2. Indiana authorizes land trusts by statute. See Ind. Code secs. 30-4-2-9, 30-4-2-13, 30-4-2-14 (1972). For land trust law generally, see Robinson v. Chicago National Bank,32 Ill. App.2d 55, 58, 176 N.E.2d 659, 661↩ (1961); Kenoe, Land Trust Practice sec. 1.3 (1974); Garrett, Land Trusts, 1955 University of Illinois Law Forum 655.