HACKLEMAN ET AL. *v.* HACKLEMAN ET AL.

[No. 11,681. Filed February 20, 1925. Rehearing denied July 1, 1925. Transfer denied July 18, 1928. Petition to reconsider ruling on petition to transfer denied November 15, 1928.]

*George C. Florea, L. L. Broaddus* and *James A. Clifton,* for appellants.

*Hyatt L. Frost* and *Wiles, Springer & Roots,* for appellees.

REMY, J.—William Hackleman departed this life testate July 23, 1856, seized in fee simple of certain real estate, leaving as his only heirs at law his widow, Nancy Hackleman, aged thirty-four, and five sons, Isaac, Oliver, Sylvester, John W. and Edmund W. Hackleman, with ages ranging from six to eighteen years. Testator's will consisted of three items. By item one he provided for the payment of his debts. Items two and three are as follows:

> 2. "I give and bequeath to my beloved wife, Nancy, the use, improvements and income of my dwelling house, barn and outhouses, lands and appurtenances and all personal property situate in Fayette county and State of Indiana, or so much of the same as may remain after my just debts are paid, to have and to hold the same for and during her lifetime."
> 3. "I give and bequeath unto all my children. that may be living at the death of my wife, Nancy all my property that may be remaining to be divided in equal parts among them."

The will was probated August 29, 1856, and, pursuant to its terms, Nancy Hackleman was placed in possession of the real estate, and continued in possession thereof until her death August 6, 1921. Three of testator's sons, Isaac, Oliver and Sylvester, died intestate prior to the death of Nancy Hackleman. Isaac died unmarried and without issue surviving him. Oliver died leaving surviving him his widow, Martha Hackleman, and a son, Homer T. Hackleman, one of the appellees herein. After the death of her husband, Martha Hackleman intermarried with Samuel Ludlow, and, as Martha Hackleman Ludlow, was made a party defendant in this suit. Sylvester Hackleman, at his death, left surviving him his widow, whose interest, if any, passed to her nephew, appellee Homer Drennan, prior to the death of life tenant Nancy Hackleman. Drennan is in no way re-

lated by blood to the Hackleman family. John W. Hackleman and Edmund W. Hackleman, appellants herein, are the only sons of testator who outlived their mother, Nancy Hackleman, and they, after her death, commenced this suit against appellees for the construction of the will and to quiet title. The theory of the complaint is that they became the owners in fee simple of the real estate, since they were the only children of testator who were living at the time of the death of the life tenant. Homer T. Hackleman and Homer Drennan filed an answer in denial; also a cross-complaint for partition. Similar pleadings were filed by Lincoln K. Tingley, administrator with the will annexed of the estate of Nancy Hackleman. The cross-complaints were each based upon the theory that by items two and three of the will of William Hackleman, the fee simple of the real estate devised was at his death vested absolutely in his children who were living at that time. To the cross-complaints replies in denial were filed. The cause was tried on an agreed statement of facts, and the court, on request of appellants, made a special finding of facts, and stated its conclusions of law thereon. There was a finding and judgment for cross-complainants.

This appeal presents but one question: Were the remainders created by the will of William Hackleman for his children contingent or vested? If the remainders are vested, the judgment must be affirmed. On the contrary, if they are contingent, the judgment must be reversed.

The question presented is not difficult, and we shall not make it appear difficult by an extended discussion. The language used by William Hackleman in his will is free from ambiguity. His intention as gathered from his will is not in doubt; nor does it contravene any principle of public policy or any inflexible rule of law. By item two of his will, the testator created in his "wife

Nancy" a life estate in certain lands—the lands the title to which is in controversy. In that item, there is no disposition of the fee. There is no contention by any one that there is any uncertainty as to the testator's intention as expressed by item two. Having by that item carved out a life estate and vested the same in his widow, the testator by the third item of his will proceeded to devise the fee of his real estate; or, as he expresses it in his will, "all of my property that may be remaining." Clearly and definitely, and by a separate testamentary clause, he says:

> "I give and bequeath unto all my children that may be living at the time of the death of my wife, Nancy, all my property that may be remaining," etc.

The devise is not to all of his children that might be living at the time of his death, and cannot be so construed, but, in words that cannot be misunderstood, he devises to those who may be living at the time of the death of his "wife Nancy." It is earnestly contended by appellee, and evidently the trial court took the same view, that the words, "that may be living at the time of the death of my wife Nancy," do not refer to a vesting in interest, that they were intended to, and do, indicate the time when, and the persons to whom, the mere right of possession was to vest. But that is not what he says. There was no occasion for him in item three to fix the time when the remaindermen should come into the right of possession. Having devised a life estate, the testator could not have vested the right of possession in another until the termination of the estate for life. If the words "that may be living at the death of my wife Nancy," are held to express the time at which the remaindermen would come into the right of possession, they are superfluous words. The words are likewise redundant if their purpose in the will is to indicate those remainder-

men who would have the right of enjoyment, for that, too, was fixed by the creation of the intervening estate. If, however, the testator intended to create a contingent remainder in those of his children who would be living at the time of the death of his widow, no words need be added to the will, and none need be taken away. Lawyers and laymen alike may read and understand the testator's meaning.

But appellees argue that it must be presumed that words of postponement in a will relate to the beginning of the enjoyment, and not to the vesting of the remainder, that there is a presumption that a testator intended to dispose of his entire estate, and that the law favors the vesting of remainders absolutely, rather than at the death of the first taker. These rules are as stated by appellees, but they have no application here. They are rules for the construction of ambiguous wills. Although the law favors the vesting of estates, and looks with disfavor on the postponement of the vesting of title, nevertheless, contingent remainders are lawful, and if a testator, by unambiguous language, creates a contingent remainder, it is the duty of the court to uphold it. *Stephens* v. *Evans* (1868), 30 Ind. 39; *Watson* v. *Tracey* (1921), 77 Ind. App. 163, 133 N. E. 411; *Chapin* v. *Crow* (1893), 147 Ill. 219, 35 N. E. 536, 37 Am. St. 213. As was said in *Herron* v. *Stanton, Admr.* (1920), 79 Ind. App. 683, 128 N. E. 363, "Courts have no more right to make wills for the dead than they have to make contracts for the living." *Gibson* v. *Seymour* (1885), 102 Ind. 485, 2 N. E. 305, 52 Am. Rep. 688.

Appellees cite the following cases: *Alsman* v. *Walters* (1914), 184 Ind. 565, 106 N. E. 879, 111 N. E. 921; *Aldred* v. *Sylvester* (1916), 184 Ind. 542, 111 N. E. 914; *Busick* v. *Busick* (1917), 65 Ind. App. 655, 115 N. E.

1025. It is contended that in principle these cases are the same as the case at bar, and must control it.

The devise under consideration in the Alsman case was in the following language:

> "I give and bequeath to my son Francis M. Walters during his natural life, and after his death, to his children surviving him, in fee simple, the following tract of land," etc.

Appellee in that case urged that the remainder created by the will was contingent. The Supreme Court, in deciding that the will created a vested remainder, reached the conclusion it did by holding that the language of the will was ambiguous, and applying the established rules of construction. The holding that the language of the will was ambiguous was predicated primarily upon the fact that the testator had used the words "in fee simple" in connection with the words of devise. In discussing the question, the court in its opinion, among other things, said: "Appellee's contention would appeal with much stronger force were the phrase 'in fee simple' eliminated; in such case the term 'surviving him' might better denote an intent to limit the vesting of the absolute estate in those children only who might survive the first taker. However, considering the language used in its entirety, we are of the opinion that a clear intention to create such an estate as is contended for by appellee is not manifested, and, therefore, it is necessary to resort to the established rules of construction of ambiguous devises. . . . This will shows . . . that the use of the words 'fee simple' following the same language concededly used in devising a fee simple absolute, denotes the devise of an absolute, rather than a contingent fee. Against this is the phrase 'surviving him' on which appellee bases his claim. Aside from any question of words of survivorship involving a double meaning—postpone-

ment of enjoyment or vesting of the estate—we are satisfied that sufficient ambiguity appears properly to invoke the application of rules of construction."

The will in the case at bar does not contain the words "in fee simple" in connection with the words of devise. Not only that, but the fee is devised by a separate testamentary clause, in which the technical word "bequeath" is used, and by language definite and certain, and is clearly distinguishable.

We do not deem it necessary to point out the differences between the will under consideration and the wills which were construed by the courts of appeal in the Aldred and Busick cases. It is sufficient to say that in each the devise was couched in language in no way similar to that used in the Hackleman will. The language of the devise in each of those cases was more or less complicated, making necessary the application of rules of construction. So, also, with other cases cited by appellees. None of the cases cited as precedents is controlling. As has many times been said, no two wills are alike. While precedents are valuable aids to courts in the interpretation of wills, they are very rarely conclusive, for, in the last analysis, the meaning of every will must be determined upon considerations pertaining to its own peculiar facts. *Egleston* v. *Georgia Trust Co.* (1917), 147 Ga. 313, 93 S. E. 878, 3 A. L. R. 295.

If appellees are right in their contention that the Indiana cases they cite and rely on control the case at bar, and require an affirmance of the judgment, then it must follow that those cases would be out of harmony with the very great weight of authority. There have been many decisions in this and other jurisdictions in which wills similarly worded have been under consideration. We cite a few of the cases, giving with each the limitation clause held by the court to have

created contingent remainders. *Stephens* v. *Evans* (1868), 30 Ind. 39: "It is my will that upon the death of my said son Comilas and his wife, or upon his death and the intermarriage of his widow with another man, thereupon, instantly, and thenceforth [the property devised in trust for the life tenant] shall descend, go to, and become the absolute property of the children of my said son, living at the happening of the said contingency." *Whitesides* v. *Cooper* (1894), 115 N. C. 570, 20 S. E. 295: "At the death of my wife, the plantation, with all its rights and interest, I bequeath and devise to our seven sons [naming them] or such of them as may be living at their mother's [life tenant's] death." *Teets* v. *Weise* (1885), 47 N. J. Law 154: "After the decease of my said daughter Julian [life tenant] I give and devise the farm to all her children and the issue of any deceased child or children of my said daughter that may be living at her decease." *Nash* v. *Nash* (1866), 94 Mass. 345: "And in case of the death of my said wife without her being again married, I give and bequeath the whole of my estate to such of my children as may then be living." *McGillis* v. *McGillis* (1898), 154 N. Y. 532, 59 N. E. 145: "From and after the decease of both my said daughter and her husband, I give, devise and bequeath the remainder . . . to the lawful issue of my said daughter then living." *Birdsall* v. *Birdsall* (1911), 157 Iowa 363, 132 N. W. 809: "At their death [life tenants] I will, devise and give the quarter section of land, and the same shall descend to, and be the property of the said Walter Gibson Birdsall who may be living at the time and the issue of any child of the said Walter Gibson Birdsall who may have then deceased." *Hastings* v. *Hastings* (1877), 123 Mass. 158: "Then in trust for all and every child and children of said Sally Hastings [life tenant] who shall be living at the time of her decease." *DeLassus* v. *Gatewood* (1880), 71 Mo. 371: "At the death or

marriage of my said wife [life tenant], it is my will that all of my estate heretofore bequeathed shall be equally divided between my children that are alive, or their bodily children, to wit" (naming them). *Faber* v. *Police* (1877), 10 Rich. (S. C.) 376: "From and immediately. after the death of my said son [life tenant], then in trust to and for the lawful issue of my said son living at the time of his death." *Lane* v. *Patterson* (1912), 138 Ga. 710, 76 S. E. 47: "At her death [life tenant] to her children living at the time of her death." *Nichols* v. *Guthrie* (1902), 109 Tenn. 535, 73 S. W. 107: "At her death [life tenant] all of said property is to be equally divided among the children of said Elizabeth [life tenant] then living, or the descendants of such children." *Hill* v. *Rockingham Bank* (1864), 45 N. H. 270: "After her decease [life tenant] to be equally divided among my living children." *Compton* v. *Rixey's Exrs.* (1919), 124 Va. 548, 98 S. E. 651, 5 A. L. R. 465: "Upon the death of my wife [life tenant] or her marriage . . . I direct my entire estate to go to and be divided equally between my children then living and the descendants *per stirpes* of such as may then be dead with issue surviving." *Haward* v. *Peavey* (1889), 128 Ill. 430, 21 N. E. 503, 15 Am. St. 120: "On the death of my wife [life tenant] . . . To my son William I give $200, . . . and the land . . . my executors may sell . . . and the proceeds of my property both real and personal to be divided among my children. . . . William as above mentioned to have $200, and the residue equally divided between such of my children (naming them) as may be alive, or the lawful issue of such of them as may be dead leaving lawful issue."

Statements by leading textwriters are in accord with judicial authority. Gardner, at page 509 in his work on wills, says: "When the remainder is limited to those who survive or are living at the termination of this es-

tate, it is regarded, by the decided weight of authority, as contingent, by reason of uncertainty as to the remaindermen, they being regarded as incapable of ascertainment until the expiration of the prior estate."

Underhill, in the second volume of his work on wills, at page 729, states the law to be: "Where he (testator) gives property to A. for his life with a remainder to his children who are 'living at his death,' or to his children 'then living,' or to the children 'then surviving,' or uses other language which clearly shows that he intends only those to take who are living at the death of the life tenant, those in existence at that date will form the class of children among whom the property is to go, to the exclusion of the heirs of those children who have died in the interval between the death of the testator and the death of the life tenant whose shares go to the survivors. This is true whether the limitation is to the children of the life tenant, or to the children of the testator."

Gray, in his excellent work on Perpetuities, at page 86, makes the following clear statement: "But on a devise to A. for life, remainder to such of his children as survive him, the remainder is contingent."

We hold that William Hackleman by item three of his will created a contingent remainder in those of his children who would be living at the time of the death of the life tenant.

Judgment reversed, with instructions to the trial court to restate its conclusions of law in conformity with this opinion, and render judgment accordingly.

ON PETITION FOR REHEARING.

REMY, J.—The case of *Burrell* v. *Jean* (1925), 196 Ind. 187, 146 N. E. 754, to which our attention has been called by appellees in their petition for rehearing, is clearly dis-

tinguishable from the case at bar. The language used in the Hackleman will is:

"I give and bequeath unto all my children that may be living at the time of the death of my wife, Nancy, all of my property that may be remaining, to be divided in equal parts among them."

The language in the will in the Burrell case:

"And after the death of my said daughter, I give and devise said lands to her children, and if she dies leaving no child or descendant of any child surviving her, said real estate shall be equally divided among my heirs."

It is to be observed that in the will in the latter case the devise over is to a class—to the first taker's children some of whom were living at the time of the death of the testator. In the Hackleman will, the devise over is not to testator's children as a class, but to such of the testator's children as should be living at the time of the death of the life tenant. In the will in the Burrell case, the devise of the remainder is not to the children who should survive, but to the "children" of the life tenant. There is no contingency attached to the taking, and, of course, at the death of the testator, the remainder vested absolutely. To become a remainderman under the Hackleman will, the child of the testator must have survived the life tenant. Until the death of Hackleman's wife, it was uncertain who would survive her, and in that lay the contingency on which rested the vesting of the remainder.

The form of devise found in the will in the Burrell case has many times been construed by the courts, and almost universally has been held to vest the fee in the members of the class, subject to open and let in afterborn members of the class; and subject also to having the share of a member of the class increased according to the laws of descent, by the death of a member of the class.

*Crawley* v. *Kendrick* (1904), 122 Ga. 183, 50 S. W. 41, 2 Ann. Cas. 643, and note.

It is equally well-settled that where the devise is for life, with remainder over to such of one's children as may be living at the time of the death of the life tenant, the remainder is contingent, and does not vest until it can be determined who will survive. In addition to authorities cited in principal opinion, see 23 R. C. L. 543, and cases there cited. The author of that valuable text correctly states the law to be: "Where the gift of a remainder is accompanied by words of survivorship, as where the remainder is to the testator's children or the survivor or survivors of them, the estate will go to those surviving at the time fixed for the distribution or vesting in possession, unless a different intention is disclosed by the will. In the case of a bequest to one during life, and after his death to the testator's living children, the words of survivorship refer to the death of the tenant for life, or the time of distribution; and the children living at that period will take to the exclusion of the representatives of such as have died since the death of the testator. Where the devise is to the testator's wife for life and at her death to such of his children as survive her or shall then be living the benefit does not purport to be conferred on the children as children or individuals named, but as survivors, which indicates that an immediate vesting is not intended."

Again, the language used by the testator in the will in the Burrell case, as held by the Supreme Court, is ambiguous, and calls for the application of the rules of construction. The court, in discussing the question as to how the will should be construed well says: "The various contentions here submitted by counsel for each of the parties related to that part of the same item, where the testator disposed of the fee. The several conclusions drawn, based upon different mean-

ings, attributed to the wording of the will, are exceedingly persuasive that a correct result in the matter may be reached only by a resort to the established rules for the construction of ambiguous wills."

The item of the Hackleman will now under consideration is not ambiguous. No one contends that it is. There are not here "various contentions" as to its meaning. There is not the slightest doubt as to the meaning of the item. The decision in the Burrell case is in accord with the weight of authority; but the principles which rule in that case have no application in the case under consideration.

Rehearing denied.