SPENCE ET AL. *v.* THE SECOND NATIONAL BANK OF RICHMOND, INDIANA, ADMINISTRATOR, ETC., ET AL.

[No. 18,692.   Filed December 21, 1955.]

*Charles V. Livengood,* of Richmond, for appellants.

*Gardner, Jessup, Harrington & Haworth,* of Richmond, *Feemster & Feemster,* of Cambridge City, *Leroy C. Hanby,* of Connersville, *Lee B. Fidler,* of Anderson, *Hollowell & Hammil,* of Indianapolis, and *Robert Hollowell,* (of counsel) of Indianapolis, for appellees.

KENDALL, J.—Appellees filed suit in the lower court for the construction of Item Four of the last will and testament of Louisa J. Kimmel.

After filing of answers, the cause was submitted to the court for trial who found that by the terms thereof the testatrix, Louisa J. Kimmel, devised one-fourth (1/4) of all property remaining and not used for the care and support of her son, Arthur J. Kimmel, to Savannah Hiser; one-twelfth (1/12) to Goldie Derrickson, and the remaining two-thirds (2/3) thereof to Ervin K. Buser, Clayton Kimmel, Edith Burris and Grace Berry as contingent remaindermen; that the vesting

of the estate was contingent upon the death of Arthur J. Kimmel. Judgment was rendered accordingly.

Appellant's motion for new trial contended that the finding of the court was not sustained by sufficient evidence and was contrary to law.

The Assignment of Error is the overruling of the motion for new trial.

Appellee was appointed administrator *de bonis non* with the will annexed on June 13, 1951, for the purpose of making distribution of the residue of the estate of the testatrix under the terms of Item Four of the will. The testatrix died January 1, 1922. Arthur J. Kimmel, her son, died June 11, 1951. Her husband preceded her in death.

Item Four of the will of Louisa J. Kimmel is as follows:

> "At the death of my beloved son, Arthur J. Kimmel I give, devise and bequeath all the property herein devised and bequeathed to him, which may not have been used for his proper care and keeping, as follows, to-wit:
>
> "Two thirds (2/3) of all of said property to the brothers and sisters of my beloved husband Daniel Kimmel, now deceased, who may be living at the time of the death of my said son, and to the children of any of the brothers and sisters of my said husband who may have died prior to the death of my said son.
>
> "Each brother and sister shall have and hold, share and share alike, and the child or children of such brother or sister of my said husband as may have died prior to the death of my said son, shall take the share of such deceased parent, and said share shall be divided equally among the children of such deceased brother or sister of my said husband.
>
> "I give devise and bequeath one fourth of all my property so left at the time of the death of my son Arthur J. Kimmel to my beloved sister Savannah

Hiser, and in case she shall not survive my son, then and in that case, I give, devise and bequeath said one fourth (1/4) share to Goldie Derrickson of Albany, Indiana, and in case neither my sister Savannah H. Hiser or Goldie Derrickson shall not survive my son Arthur J. Kimmel, then and in that case, I give, devise and bequeath said one fourth (1/4) share to the children of Goldie Derrickson, share and share alike.

"I give, devise and bequeath a one-twelfth (1/12) of my property, left at the death of my son Arthur J. Kimmel to Goldie Derrickson, and in case said Goldie Derrickson shall not survive my said son, then and in that case said one-twelfth (1/12) share shall go to the children of Goldie Derrickson, share and share alike."

The evidence consisted of stipulations introduced into evidence as an exhibit which contained the following pertinent facts:

Savannah Hiser, sister of Louisa J. Kimmel, survived said testatrix and Arthur J. Kimmel and was living; that she was entitled to one-fourth (1/4) of the residue of the estate of Louisa J. Kimmel on final settlement; that Goldie Derrickson, likewise, survived Louisa J. Kimmel and Arthur J. Kimmel and is alive and entitled to one-twelfth (1/12) of the residue of the estate of Louisa J. Kimmel on final settlement; that Daniel Kimmel, the husband of Louisa J. Kimmel died June 4, 1891; that at said time he left nine brothers and sisters, as follows: Lew Kimmel, Molly Crawford, Sarah Howard, Elizabeth Orr, Rebecca Buser, Joseph Kimmel, William Kimmel, George Kimmel and Lorenzo Kimmel; that each of said brothers and sisters above-named died prior to Louisa J. Kimmel and were not alive at the time of the death of Arthur J. Kimmel.

All nine of the brothers and sisters of testatrix's husband preceded testatrix in death. Seven of them

left children surviving the testatrix while only four of the children of the brothers and sisters of the testatrix's husband were alive at the death of Arthur J. Kimmel, namely: Edith Burris, Ervin Buser, Clayton Kimmel and Grace Berry.

Appellants contend that two-thirds of the property devised and bequeathed to Arthur J. Kimmel for his life vested absolutely at the death of the testatrix in the children of deceased brothers and sisters of Daniel Kimmel alive at that time, while appellees maintain that the testatrix devised said two-thirds of the property not used for her son's care to the brothers and sisters of her husband who might be living at the time of the death of testatrix's son and to the children of any of such brothers and sisters who might have died prior to the death of her said son.

The question as proposed by the appellees is: Does the word "children" in Item Four of the will in question include grandchildren.

Unless a different intention is manifested from a will, the word "children" properly includes only the immediate descendants of the person named and does not, as a rule, apply to grandchildren or issue generally. *Cummings et al* v. *Plummer et al.* (1883), 94 Ind. 403; *Pugh et al.* v. *Pugh et al.* (1885), 105 Ind. 552, 5 N. E. 673; *Alsman* v. *Walters* (1914), 184 Ind. 565, 106 N. E. 879, 111 N. E. 921; *Casper* v. *Helvie* (1925), 83 Ind. App. 166, 146 N. E. 123 (transfer denied); *Edwards* v. *Bates* (1923), 79 Ind. App. 578, 139 N. E. 192; *West et al.* v. *Rassman et al.* (1893), 135 Ind. 278, 34 N. E. 991; *Burnett* v. *Mutual Life Ins. Co.* (1916), 66 Ind. App. 280, 114 N. E. 232 (transfer denied, 1917).

In construing a will, such as the one under consideration, its provisions, as well as the intent of the testator,

if manifested, must be considered. *Stimson* v. *Rountree* (1906), 168 Ind. 169, 78 N. E. 331, 80 N. E. 149; *Skinner* v. *Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243. In arriving at such intention, the will in all its parts must be considered together, and it is the duty of the court to consider the circumstances under which the will was executed. In so doing, this court cannot overlook the fact that this will used such terminology as, "at the death of my beloved son," "who may be living at the time of the death of my said son," "as may have died prior to the death of my said son," "so left at the time of the death of my son, Arthur J. Kimmel, to my sisters." This type of language is clear that the testatrix intended that two-thirds (2/3) of any of the property left after caring for the son was devised and bequeathed to the brothers and sisters of her husband, "who may be living at the time of the death of my said son and to the children of any of the brothers and sisters of my said husband who may have died prior to the death of my said son." It seems unambiguous that the time for the vesting of the estate, as fixed by the testatrix, was the date of the death of her son. There is nothing from which to infer that it was to take effect at the time of the death of the testatrix.

In this particular case, and, under the facts presented, it appears we are dealing with a class gift, the class being the brothers and sisters of testatrix's husband living at the time of the death of her son, Arthur J. Kimmel, and the children of any deceased brothers or sisters living at the time of the death of her said son. Language of a general description creates what is known as a class gift. Gavit, Indiana Law, Future Interests, Wills, Descent, at page 157, says:

"(c) *Members Included.* All words of general description are necessarily somewhat ambiguous, so that there is a frequent problem of interpretation in connection with class gifts as to the exact class which was intended to be described.

"Thus 'heirs' has been held to be a gift to 'children'; or to 'grandchildren'; and to include a 'widow'. But 'children' has been held to exclude 'grandchildren'." *Pugh et al.* v. *Pugh etal., supra.*

The will places a limitation of the vesting and distribution upon brothers and sisters *living* and the *children* of those who are not living at said time. To be able to take, one claiming under the will must bring himself into that class. It is to be noted with particular emphasis that the testatrix used the word "children." She did not use the words "heirs," or "descendants." The appellants are grandchildren of certain of the testatrix's husband's brothers and sisters, and, thus, are not included in the language used to share in the remaining property.

If appellants' contention be correct, then the words in the will, "who may be living at the time of the death of my said son," would be meaningless and mere surplusage. The language used is consistent and in harmony with that which denotes a contingent remainder. We recognize the rule that the law favors the immediate vesting of estates, and it is a well-settled rule that a will will not be construed as creating a contingent remainder if it can possibly be legally construed as creating a vested one. Nevertheless, contingent remainders are lawful, and, if a testator, by unambiguous language, creates a contingent remainder, it then becomes the duty of the court to uphold it. *Chicago, etc., Ry. Co.* v. *Beisel* (1952), 122 Ind. App. 448, 106 N. E. 2d 117.

In Thompson on Real Property, Vol. 4, Sec. 2207, page 740, it is said:

"A remainder is contingent when it is limited on an event which may happen before or after, or at the time of or after, the termination of the particular estate. Thus a conveyance for life with remainder to the heirs or heirs of the body of a living person creates a contingent remainder. Where it is impossible to ascertain the persons entitled to take until the time when the particular estate shall terminate, the remainder is contingent."

In Tiffany on Real Property, Second Edition, Vol. 1, page 489, it is said:

"A gift in remainder to those of a class of persons who may be surviving at a future time, as at the termination of the particular estate, is contingent because till then, the remaindermen cannot be ascertained. So, a gift to A for life, with a remainder to his children or his issue living at his death, creates a contingent remainder, since the remaindermen cannot be ascertained till A's death, as does a gift to A for life, and, after his death, to the children of B 'if he leave any him surviving;' the remainder in the latter case being evidently intended to enure to the benefit only of such children as might survive B."

Appellants argue that if the title did not vest until the death of Arthur J. Kimmel, the brothers and sisters of the husband of testatrix would have no title which their children could take. We see no force in this contention. The children of the deceased brothers and sisters of the testatrix's husband do not get title from their parents but from the testatrix as a member of a class, fixed by the testatrix in her will.

Sec. 56-139, Burns' 1951 Replacement, provides as follows:

"A freehold estate, as well as a chattel real, may be created to commence at a future day; and an estate for life may be created in a term of years, with or without the intervention of a precedent estate, and a remainder limited thereon; a remainder of a freehold or a chattel real, either contingent or vested, may be created, expectant on the termination of a term of years."

A fair reading of this section, in the light of our adjudicated cases, indicates that a remainder may be created in personal property as well as real estate. This position seems fortified by the following cases: *Owen et al.* v. *Cooper* (1874), 46 Ind. 524, wherein the court said:

"A remainder may be created in personal property as well as in real estate, whatever may once have been the rule on that subject. 2 Kent Com. 352, star paging; 2 Bl. Com. 398." *Gray et al.* v. *Bailey et al.* (1873), 42 Ind. 349; *Holbrook et al.* v. *McCleary et al.* (1881), 79 Ind. 167; *Thayer* v. *Wellington et al.*, 9 Allen (91 Mass. 283); *Heilman et al.* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; Gavit, Indiana Law, Future Interests, Wills, Descent, Sec. 46, p. 98.

In the case of *Rouse* v. *Paidrick* (1943), 221 Ind. 517, 49 N. E. 2d 528, the Supreme Court held that no particular estate is necessary to support a contingent remainder. When seizin was abolished, the common law rule based thereon ceased to exist. The court said:

"Consequently, we hold that no particular estate was necessary to support the contingent remainders of appellees and they were unaffected by the deed from Lewis to David."

The language of the testatrix's will shows a clear intention that her estate be used, above all things, for the care of her son during his lifetime. She specifically fixed a class to take the property at the time of the son's

death, said class to be determined at that time. As to the brothers and sisters dying before the son, their substitutes were limited to "children," not descendants of her husband's deceased brothers and sisters.

The instant case is similar to *Hackleman* v. *Hackleman* (1925), 88 Ind. App. 204, 146 N. E. 590, 169 N. E. 539 (transfer denied, 1928). In the case at bar the taking of the remainder of testatrix's estate was made to depend upon the occurring of two conditions at the death of Arthur J. Kimmel; first, there must be property remaining to be taken; second, the takers must be the brothers and sisters of testatrix's husband, or children of deceased brothers or sisters of testatrix's husband living when the son died. In our opinion, this constituted a condition precedent to the taking by a class which could not be ascertained until the death of the son. This is not analogous to the situation of specifically naming or designating in the will the remaindermen who are to take at the time of death.

The appellants strongly reply upon the case of *Heilman et al.* v. *Heilman, supra.* We do not believe the facts of the Heilman case, *supra,* are authority for the case under consideration, for in that case the testator gave the residue of the estate to his wife for life, so long as she remained unmarried, and, after her death, to his children, and if deceased, to their children. In the Heilman case, *supra,* the grandchildren were provided for in the will by appropriate designation.

We think, in the will before us, that the wording used by the testatrix is plain, and, when considered in the light of other provisions thereof, is definite and clear as fixing the time for the vesting and distribution of the remaining two-thirds (2/3) of the property as of the death of the son as well as the time for determining the members of the survived class who are to

take. The testatrix, not having included grandchildren in the class under the terms of the will as presented, they are not included in this particular class. Neither the quantum of the estate which would remain for distribution or those persons who were to take could be determined until the death of the son of the testatrix.

Judgment affirmed.

NOTE.—Reported in 130 N. E. 2d 667.