WEISHAAR ET AL. *v.* BURTON ET AL.

[No. 19,360. Filed January 15, 1962.]

598

*Russell J. Wildman* and *Cole, Wildman & Cole,* of Peru, for appellants.

*Barce & Barce, J. Edward Barce, John W. Barce,* of Kentland, *Fraser & Isham, William S. Isham* and *James A. Gardner,* all of Fowler, for appellees.

MYERS, J.—This action was commenced by appellees' complaint wherein they alleged that they were the owners of certain real estate in Newton County, Indiana, and prayed for partition and a decree of court determining the respective interests of the parties. Appellants filed an answer in compliance with Supreme Court Rule 1-3, admitting certain allegations and denying others. They also filed a cross-complaint in two paragraphs, the first alleging that they were the sole owners of the real estate and praying for a decree quieting their title, and the second alleging that they were the sole owners by reason of the last will and testament of Addison Williams and praying for a construction of that will.

Trial was had to the court. The only evidence presented consisted of an agreed statement and stipulation of facts. There was a finding in favor of appellees on their complaint and a finding against appellants on their cross-complaint. Judgment was entered accordingly, sale of the real estate was ordered, and a commissioner was appointed to make sale and to account to the court. Appellants filed a motion for new trial which was overruled. This appeal followed.

The grounds relied upon in the motion for new trial are that the findings and decision of the court were not sustained by sufficient evidence and were contrary to

law. The sole assignment of error in this appeal is that the court erred in overruling the motion for new trial.

In brief, the agreed facts are as follows: Addison Williams died testate, a resident of Newton County, Indiana, on September 4, 1909. He was the father of six children, namely, Carpenter Williams, Thomas Williams, Susan Major, Martha Ralph, Leah Cleaver and Esther Staton. His will had been executed on February 17, 1894. At that time all of his children had been married and had children of their own. However, on that date his daughters, Leah Cleaver and Esther Staton, were both deceased. Leah left two children surviving her, Addison Cleaver and Nettie Weishaar; Esther left one daughter surviving her, Betsy Johnston.

These facts were taken into consideration by Addison Williams when he drew his will. The first five items therein pertain to arrangements for his funeral, the payment of debts and the disposition of certain personal property, household goods and the home farm. It is the sixth item which is of special interest in this cause, and it reads as follows:

"Sixth: As to the balance of the real estate of which I may die seized of, it is my will and I direct that the same shall be equally divided among my children then living and the descendants of such as are now dead and of such as may be dead at the time of my death. They to have and to hold the same during their natural lives and at their death the same to go in fee simple to their children. It being my will and I direct that said real estate be divided as follows, to-wit:

"To my son, Carpenter Williams, I give and bequeath one-sixth of said real estate, he to have and to hold the same for and during his natural life and at his death the same to go to his children in fee simple, share and share alike.

"To my son, Thomas Williams, I give and bequeath one-sixth of said real estate he to have and to hold the same for and during his natural life

and at his death the same to go to his children in fee simple share and share alike.

"To my daughter Martha Stackhouse I give and bequeath one-sixth of said real estate, she to have and to hold the same for and during her natural life and at her death the same to go to her children, share and share alike.

"To my daughter Susan Major I give and bequeath one-sixth of said real estate, she to have and to hold the same during her natural life and at her death the same to go to her children in fee simple, share and share alike.

"To my granddaughter Betsy Johnston, the only child of my deceased daughter Esther Staton, I give and bequeath one-sixth of said real estate, she to have and to hold the same during her natural life and at her death the same to go to her children in fee simple share and share alike.

"To my grandchildren Addison Cleaver and Nettie Weishaar, the only children of my deceased daughter Leah Cleaver, I give and bequeath one-sixth of my said real estate, they to have and to hold the same during their natural lives and at their death the same to go to their children in fee simple. This one-twelfth to the children of Addison Cleaver and one-twelfth to the children of Nettie Weishaar, share and share alike.

"It being my intention that my said children and grandchildren as herein stated are to have the said real estate during their natural lives as herein set out, they to have the possession thereof and to receive and enjoy the benefits and profits thereof so long they shall live, but that shall in no manner sell, dispose of or encumber the same.

"In the event of any of the said children or grandchildren as herein set forth dying without lawful issue, then such portion of the real estate as herein bequeathed to them during life shall at their death pass to and vest in fee simple in the descendants of such of the legatees as herein named, as may be living at such time, to be equally divided among them per stirpes and not per capita."

Following the death of Addison Williams, his surviving widow elected to take under the law rather than

in accordance with the terms of his will. She commenced an action in the Newton Circuit Court in partition, duly causing all necessary parties, being the children and grandchildren, to be served with summons, including Nettie Weishaar and Addison Cleaver. The complaint alleged that Addison Cleaver owned a life estate in an undivided one-twelfth of the real estate and that the remainder in fee simple of such undivided one-twelfth was owned by his children. There was also an allegation that Nettie Weishaar owned an undivided one-twelfth of the real estate for life and that the remainder in fee simple was owned by her three children, share and share alike.

A judgment in partition was entered in that action wherein the real estate was divided and set off to each of the parties. In so far as Addison Cleaver and Nettie Weishaar are concerned, the decree in partition reads as follows:

"That the defendant Addison Cleaver take hold and occupy the real estate so set off to him during the remainder of his natural life, the remainder in fee simple thereof to be held and owned by his children.

"That the defendant Nettie Weishaar take hold and occupy the land so set off to her for and during her natural life, the remainder in fee thereof to be held and owned in common by her children, to-wit: the defendants, Gertie Weishaar, Frank Weishaar, and Letha Weishaar, and the other child or children that may be born to the said Nettie Weishaar, if any."

Nettie Weishaar died April 16, 1951, leaving three children, two of whom are appellants in this cause, being Frank Weishaar and Letha Weishaar Drobisch. Nettie's third child is deceased. The other two appellants herein, Robert Miller and Helen Fieldhouse, are the children of that third child.

Addison Cleaver died March 4, 1954, leaving no surviving children. The tract of land which was set off to him for life in the partition suit is the real estate in controversy herein.

The problem which presents itself to us in this appeal concerns the interpretation and construction of Item Sixth of the Will of Addison Williams. Under its provisions, appellants claim that upon the death of Addison Cleaver without surviving children the real estate he held for life goes to the descendants of his mother, Leah Cleaver, who are the appellants herein, in fee simple, to the exclusion of the other descendants of Addison Williams.

Appellees contend that, to the contrary, the real estate goes to the living descendants of all the life tenants named in the will of Addison Williams *per stirpes*. This was the position which was taken by the trial court.

As has been said many times in the construction and interpretation of a will, the cardinal and paramount rule is to ascertain the intention of the testator and give it effect as long as it is not prohibited by law or violates public policy. 29 West's Indiana Law Encyclopedia, Wills, ch. 6, §173, p. 321. This intention may be ascertained by the language or the words of the will itself and an examination of the entire will or from the four corners thereof. 29 West's Indiana Law Encyclopedia, Wills, ch. 6, §174, p. 324.

Also, circumstances and conditions surrounding the testator at the time the will was executed may be considered if there is any ambiguity in the language or terms of the will. 29 West's Indiana Law Encyclopedia, Wills, ch. 6, §175, p. 326.

Appellants argue that, pursuant to these general rules, it is manifest that Addison Williams, the testator, intended that each child of his should take one-sixth

of his estate, including the residuary real property devised in Item Sixth of the Will, and that in the event of the death of a child, such child's one-sixth should go to his child or children *per stirpes* and not *per capita;* that, accordingly, the one-sixth interest which would have gone to his daughter, Leah, should descend *in toto* to her children and their descendants *per stirpes;* that the will should be so construed as to give due regard to the natural impulses and feelings of mankind so as to take into consideration the rules of disposition of estates in order that beneficiaries will take *per stirpes.* Appellants claim that it would be "unfair" to place a construction on the will which would give the lineal descendants of five of the testator's children their respective one-sixth interest each of his estate and deprive the lineal descendants of the sixth child, being the appellants herein, of a full one-sixth share.

Appellants have cited authorities which they claim are in point in this case. However, in determining the intention of the testator herein, such cases are not of great value except as expressing certain general principles of law which cannot be disputed. In the cases cited, neither the provisions of the wills involved therein nor the facts are the same as those in the instant case.

" 'While precedents are of great weight in aiding construction [of a will], they have not the controlling force that they have in most branches of law, since a slight difference in the language which testator uses may make a great difference in his intention.' Page on Wills, Vol. 1, 2nd Ed., §807, p. 1363." *Weppler* v. *Hoffine* (1941), 218 Ind. 31, 39, 29 N. E. 2d 204, 30 N. E. 2d 549, 550. See, also, *Waybright* v. *Longstreet* (1943), 221 Ind. 251, 46 N. E. 2d 683.

It is true that courts in construing wills will give due regard to the natural impulses and dealings of mankind

and take into consideration the general laws of descent and the disposition of estates. *Runyan* v. *Rivers* (1934), 99 Ind. App. 680, 684, 192 N. E. 327, 329. But, as was stated in the case just above cited: " '. . . this mode of construction will yield to a . . . glimpse of a different intention in the context.' "

". . . it is for the testator and not the courts to determine what is a liberal, just, equitable, and proper disposition of the testator's estate. Accordingly the inconvenience or absurdity of a devise, or the fact that the testator did not foresee all the consequences of his disposition, is no ground for varying the construction when the terms of the will are unambiguous." 29 West's Indiana Law Encyclopedia, ch. 6, §179, p. 333; *Brown* v. *Union Trust Co.* (1951), 229 Ind. 404, 98 N. E. 2d 901; *Gibson* v. *Seymour et al.* (1885), 102 Ind. 485, 2 N. E. 305.

It may well be that the testator intended for each of his children and their descendants to share equally as a class *per stirpes* as to certain property which he bequeathed them in other items of his will. In Item Third he directed that certain personal property be sold to pay debts. The remainder of the proceeds of the sale "to be divided between my wife and my children and the descendants of my children who are and may be dead at such time and in the manner directed by the laws of Indiana in the case of intestacy." In Item Fifth he devised the home farm to his wife for life, and at her death it was to be sold and the net proceeds were to be "equally divided among my children and the descendants of my children who are and who may be dead at such time."

However, in Item Sixth, which pertained only to residual real estate, he did not use the same language,

nor did he treat the descendants of his children alike. He gave a life estate in one-sixth of the real estate to each of his four children who were then living, with the remainder to vest in fee simple in their children. Thus, those grandchildren of the testator who were born of the four living children, and who survived the testator at his death, were vested at once with remainders in fee simple subject to opening up and letting in children thereafter born. *Coquillard* v. *Coquillard* (1916), 62 Ind. App. 426, 432, 113 N. E. 474; *Burrell* v. *Jean* (1925), 196 Ind. 187, 200, 146 N. E. 754; 29 West's Indiana Law Encyclopedia, Wills, ch. 7, §293, p. 448.

The grandchildren of the testator who were born of his two deceased daughters, Leah Cleaver and Esther Staton, received only life estates with attendant restrictions upon them both as a matter of law and by the terms of the will. It would seem that if appellants' argument is followed to its logical conclusion, the testator would have treated these particular grandchildren the same as the others and given them outright their interest in fee simple, one-sixth to Betsy Johnston, the daughter of Esther, and one-twelfth each to Addison Cleaver and Nettie Weishaar, the children of Leah. However, by the clear terms of the will, he did not see fit to do so. Whether the difference in treatment between these three grandchildren and the others was on purpose, or was by sheer oversight, is a matter this court cannot determine. We are bound by the exact words in the will, which evidence a plain intent to deprive these three grandchildren of a fee-simple interest which the others were to receive at the death of their parents.

This of itself is some indication that, in so far as the disposition of his residual real estate is concerned, the

testator intended to treat his grandchildren differently from the way he treated them in disposnig of the proceeds from the sale of personal property and the home farm, as set forth in Items Third and Fifth of the Will. Thus, the tenor of Item Sixth varies from that of the other items of the will, and we must predicate our conclusions more within the confines of that item than upon any other provisions of the will.

The testator specifically named his four children in Item Sixth as the recipients of life estates. Then he specifically named his three grandchildren as similar recipients, who were the children of his two deceased daughters. In so far as Leah is concerned, he gave to her two children, Addison Cleaver and Nettie Weishaar, one-sixth of his real estate, "they to have and to hold the same during their natural lives and at their death the same to go to their children in fee simple. *This* one-twelfth to the children of Addison Cleaver and one-twelfth to the children of Nettie Weishaar, share and share alike." (Our emphasis.)

In general, he gave jointly to Addison and Nettie an undivided one-sixth interest for life, but by the last sentence in that paragraph he specified that each was to have "*this* one-twelfth." (Our emphasis.)

The rule is stated that specific language generally controls that of a general nature. *Porter* v. *Union Trust Co.* (1915), 182 Ind. 637, 643, 108 N. E. 117. Therefore, at the time of testator's death, and pursuant to the decree in partition previously rendered by the Newton Circuit Court, Addison Cleaver was granted a life estate in one-twelfth of the residuary real estate, with a contingent remainder over to his children, if he had any. While contingent remainders are not favored, and it is a well-settled rule that a contingent remainder will not be construed as such if it can possibly be le-

gally construed as a vested one, nevertheless contingent remainders are lawful and courts must uphold them if a testator by unambiguous language sees fit to create such. *Spence et al.* v. *Second Nat'l Bank, Admr., etc.* (1955), 126 Ind. App. 125, 132, 130 N. E. 2d 667.

The children of Nettie Weishaar then living were vested with the fee-simple remainder of the other one-twelfth interest.

When Addison Cleaver died without children, his contingent remainder fell within the provisions of the last paragraph of Item Sixth. He was a grandchild who died without lawful issue. His one-twelfth portion of the real estate "bequeathed" during his life passed to and vested in the descendants of the "legatees as herein named." Those legatees were the four living children of Addison Williams and his three grandchildren, including Addison Cleaver, all of whom were specifically named in Item Sixth. Thus, the trial court was correct in holding that the descendants of those life tenants, except Addison Cleaver, of course, took interests in his one-twelfth share *per stirpes*.

To say that Nettie Weishaar and Addison Cleaver were intended to be treated as a class or a unit, and thus considered as one legatee under the last paragraph of Item Sixth, so that the one-sixth interest remainder in fee vested in Nettie's children at the time of testator's death, subject to opening to include Addison's children, if he had any, as appellants argue, is contrary to the wording of the paragraph granting the life estates to Nettie and Addison. Therein it was specifically stated that each was to receive "this one-twelfth."

Appellants, in argument, attempt to re-phrase certain paragraphs of Item Sixth so as to make them conform to their interpretation of the will, claiming that

this was what the testator really intended. However, this was said by our Supreme Court in *Gibson* v. *Seymour et al., supra* (at page 490 of 102 Ind., at page 307 of 2 N. E.):

"The authorities are not divided upon the proposition that courts cannot, except in the clearest cases, change by transposition, alteration, ██ subtraction or substitution, the words of a will, but must take them as they are written."

Judgment affirmed.

Ryan, C. J., and Ax and Cooper, JJ., concur.

NOTE.—Reported in 179 N. E. 2d 211.