BLANCHE COLLINS *v.* JOHN HELD ET AL. *v.* THE UNKNOWN
HUSBAND OR WIFE, THE UNKNOWN WIDOWER OR WIDOW,
THE UNKNOWN HEIRS OR DEVISEES OF JOHN T. DEVENING ET AL.

[No. 1-776A112. Filed November 17, 1977. Rehearing denied December 27, 1977.
Transfer denied June 2, 1978.]

*Robert Adams, Adams & Cramer,* of Shelbyville, for appellant.

*James Matchett,* of Shelbyville, for appellees; *C. Thomas Cone,* of Greenfield, for appellee Hardin.

LYBROOK, J.—Defendant-appellant, Blanche Collins, appeals from the trial court's granting of plaintiffs' Motion for Summary Judgment.[1] We reverse, having found that the trial court erred in its determination of Indiana law applicable to the case at bar.

## FACTS

The facts most relevant to this cause reveal that John T. Devening died testate on May 3, 1936, in Shelby County, and that the portion of Devening's will relevant to this controversy reads as follows:

"ITEM 3. I will and devise to my beloved wife, Jessie Devening, to have and to hold the same for and during the term of her natural life and for that term only, all the real estate of every

---

1. Ind. Rules of Procedure, Trial Rule 56.

kind and description and wheresoever located of which I may die seized. On the death of my said wife or in the event of her death prior to my decease it is my will that my daughters, Connie Ethel Allender and Gladys M. Held shall each take and hold the undivided one-half interest in said real estate for and during the term of their natural lives respectively, the fee simple of asid [sic] real estate to be vested in my grandchildren, children of my two said daughters. It is my will that said daughters hold said real estate as tenants in common for and during their respective natural lives and that same be not partitioned between them, but this will shall not preclude such division and partition if they so desire; if my said daughters desire and shall seek to partition the life estate held in said real estate by them then I will and direct that said real estate be divided and partitioned between them as nearly equally as possible. On the death of either of my said daughters it is my will that the children of such deceased daughter living at the time of her death shall take and hold absolutely and in fee simple free and clear of any interest or claim of such surviving daughter the part or interest in said real estate held by their deceased mother as life tenant. I will and direct that said real estate and no part or interest therein be not sold prior to the arrival at the age of twenty-one years of all my said grandchildren."

A genealogical chart has been included herein which summarizes the relevant facts of this case.

1. Marjorie (d. 1957)
2. Marsha
3. Robert
4. Thomas
5. Barbara
6. Patricia
7. Rebecca
8. Jean
9. John

Devening was survived by his wife, Jessie, and two daughters, Connie Ethel Allender and Gladys M. Held. Connie was married to Warren P. Allender and had one son, Malbrook Allender. Gladys was also married and had nine children.

On May 9, 1944, Malbrook Allender died intestate. He was survived by his wife, Blanche Collins, defendant-appellant in the case at bar. In February, 1947, Connie Allender and her husband, Warren, conveyed all their interests (a life estate, vested in interest, for the life of Connie, see *infra*) in the property mentioned in Item 3 by quit claim deed to Gladys Held. Testator's widow, Jessie, died on July 19, 1960. Gladys Held died intestate on November 2, 1973. Testator's other daughter, Connie, was still alive at the commencement of this action.

The plaintiffs in this case are Gladys' children and Ferd Grime, husband of one of Gladys' children, Marjorie, who had died in 1957. Plaintiffs maintain that Item 3 devises the real estate mentioned therein as a class gift per capita, rather than per stirpes. On February 9, 1975, the court entered the following judgment granting plaintiffs' Motion for Summary Judgment:

"ORDER, JUDGMENT AND DECREE GRANTING MOTION OF PLAINTIFFS FOR SUMMARY JUDGMENT AND DENYING CROSS-MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT

1. This cause came on to be heard on October 9, 1975, on a Motion for Summary Judgment by Plaintiffs filed June 23, 1975, and a Cross-Motion for Summary Judgment by Defendants filed October 8, 1975.

2. The Court has considered the several motions, the stipulations filed, the pleadings, judicial admissions, briefs of respective counsel and the arguments of counsel.

3. Acordingly, the Court is of the opinion that there is no genuine issue as to any material facts that has been shown to exist and that as a matter of law the Plaintiffs are entitled to a summary judgment in their favor and Defendants' Cross-Motion for summary judgment should be denied.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that:

(a) The motion of Plaintiffs for a summary judgment in their favor is granted.

(b) The cross-motion of Defendants for summary judgment in their favor is denied.

(c) The Court further adjudges that for the duration of the life of Connie Ethel Allender the eight (8) surviving children of Gladys Held, namely, John Held, Jean Shelton, Rebecca McLaughlin, Patricia Hardin, Barbara Hardin, Thomas Held, Robert Held and Marsha Wells are entitled to receive the entire use and income from the real estate owned by John T.

Devening at his death and described in Plaintiffs' complaint. The Court further finds and adjudges that at the death of said Connie Ethel Allender the life estate in the use and income as held by the eight surviving children of said Gladys Held, will cease, and the remainder interest, which is a fee simple interest, will be allocated in ten undivided shares of one-tenth (1/10) each in the eight surviving children of Gladys Held, the estate of Marjorie Held Grime, the deceased child of Gladys Held, and the estate of Malbrook Allender, the deceased child of Connie Ethel Allender.

The above and foregoing is fully and finally ordered, adjudged and decreed as aforesaid, this 9 day of February 1976.

s/  Robert D. Ellison
Robert D. Ellison, Judge,
Shelby Circuit Court."

From this judgment, Blanche Collins appeals.

### ISSUES

The parties raise the following issues for our review:

(1) Whether the trial court properly construed the will of testator Devening when the court said: "... at the death of said Connie Ethel Allender the life estate in the use and income as held by the eight surviving children of said Gladys Held, will cease, and the remainder interest, which is a fee simple interest, will be allocated in ten undivided shares of one-tenth (1/10) each in the eight surviving children of Gladys Held, the estate of Marjorie Held Grime, the deceased child of Gladys Held, and the estate of Malbrook Allender, the deceased child of Connie Ethel Allender"?

(2) Whether in the absence of any manifestation of intent in the will of Devening a per stirpes or per capita construction should be made of the devises to Devening's grandchildren?

(3) Whether the heirs of Malbrook Allender are entitled to a present interest in the real estate; and, correspondingly, whether Gladys' life estate *pur autre vie* can descend to her heirs?

(4) Whether the trial court erred in its decree of summary judgment?

The first issue for our consideration is whether the trial court properly construed the will of testator Devening when the court said, in its judgment:

"... at the death of said Connie Ethel Allender the life estate in the use and income as held by the eight surviving children of said Gladys Held, will cease, and the remainder interest, which is a fee simple interest, will be allocated in ten undivided shares of one-tenth (1/10) each in the eight surviving children of Gladys Held, the estate of Marjorie Held Grime, the deceased child of Gladys Held, and the estate of Malbrook Allender, the deceased child of Connie Ethel Allender."

We determine that this is an incorrect interpretation of Devening's intent as that intent was expressed in his will. It is an established legal principle that in construing a will the governing factor is the intention of the testator as expressed and shown by the language thereof, and the primary purpose of such construction is to ascertain and give effect to such intention. This is true so long as such intention does not interfere with established rules of law. *Trust of Paszotta v. Calumet National Bank* (1961), 131 Ind. App. 604, 172 N.E.2d 904.

The relevant portions of Item 3 of Devening's will, in reference to the daughters' life estates, read as follows:

"... the fee simple of asid [sic] real estate to be vested in my grandchildren, children of my two said daughters.

\* \* \*

"On the death of either of my said daughters [Gladys and Connie] it is my will that the children of such deceased daughter *living at the time of her death* shall take and hold absolutely and in fee simple free and clear of any interest or claim of such surviving daughter the part or interest in said real estate held by their deceased mother as life tenant." (Our emphasis).

In the construction of a will the rule is stated that specific language generally controls that of a general nature. *Weishaar et al. v. Burton et al.* (1962), 132 Ind. App. 597, 179 N.E.2d 211; *Porter v. Union Trust Co.* (1915), 182 Ind. 637, 108 N.E. 117.

Item 3 of the will under consideration contains general language which indicates that the real estate is to vest in the

grandchildren. Later in Item 3 specific language appears to limit the vesting. The specific language directs that at the death of either of testator's daughters the children of that daughter, *living at the time of her death*, shall take a remainder interest in fee.

Here there are two individuals (Ferd and Blanche) claiming an interest in the property on the basis that they are spouses of two deceased grandchildren (Marjorie and Malbrook, respectively). These grandchildren predeceased their mothers. The will clearly provides that the property is to go to the testator's grandchildren who are living at the time of their mother's death. Therefore, we conclude that Ferd Grime, husband of deceased Marjorie Grime, one of Gladys' children, could not take a remainder in fee upon Gladys' death. We also conclude that Blanche Collins, wife of deceased Malbrook Allender, Connie's child, cannot take a similar interest upon Connie's death. This interpretation is in accordance with the plain and unambiguous language used by the testator.

In the portion of his will under consideration, testator created a contingent remainder in fee in his grandchildren; the contingency was their surviving their mother. Malbrook and Marjorie having failed to survive their mothers, their estates are ineligible to take upon the subsequent deaths of Gladys and Connie. While contingent remainders are not favored, and it is a well settled rule that a contingent remainder will not be construed as such if it can possibly be construed as vested, contingent remainders are nevertheless lawful and courts must uphold them if a testator by unambiguous language sees fit to create such. *Weishaar, supra; Spence et al. v. Second National Bank, Admr., etc.* (1955), 126 Ind. App. 125, 130 N.E.2d 667; Page on Wills, 3d Ed. § 43.12:

> "Any lawful event which testator may select may be the subject of the contingency. A common contingency is where the remainder is to pass to the remainderman, provided he survives some designated person. In such case, at least as long as the designated person is alive, the remainderman has only a contingent remainder. If the devise is to a certain person or persons 'if surviving' without other context to show that a future

time is meant, it is construed to mean if surviving at the testator's death, and such words do not of themselves make the interest contingent. *Where property is devised to one for life remainder over to another, providing that other survives the life tenant, the interest of the remainderman is a contingent remainder, if testator intends such language in its literal meaning*, and not as a method of describing the termination of the particular estate by taking its normal termination as standing for any and every way in which it may terminate." (Emphasis added). Page, *ibid.*

Indiana case law conforms to the principles set out above. The court in *Chicago, Indianapolis & Louisville Ry. Co. v. Beisel* (1952), 122 Ind. App. 448, 106 N.E.2d 117, reviewed the relevant case law on this subject, and stated as follows:

"Some of the earlier Indiana cases, *Davidson v. Koehler* (1881), 76 Ind. 398, and *Davidson v. Bates* (1887), 111 Ind. 391, 12 N.E. 687, held remainders vested which were clearly contingent. However, the later cases have clearly held that where the intention of the testator is clear and unambiguous to create a contingent remainder it must be given effect. Judge Richman in *Leeds v. Leeds* (1945), 223 Ind. 593, 63 N.E.2d 541, in discussing the provisions of a deed which contained the words, '* * * to Fannie Pate * * * during her natural life, and then to the children of her body that may survive her', stated: '* * * A future interest was created which under common law terminology was a contingent remainder. The Restatement calls it a remainder subject to a condition precedent. Restatement of the Law—Property, ch. 7 § 157, note p. 542, Comment on Clause (d), p. 561 *et seq.* There were several uncertainties, the last of which, survival, could not be resolved until the death of the life tenant. *Eo instanti* the remainder vested in appellee Richmond P. Leeds. The intention of the grantors is clear and must be given effect, citing authorities.'

In *Hackleman v. Hackleman, supra,* the words of the devise in the will were: 'I give and bequeath unto all my children that may be living at the death of my wife, Nancy, all my property that may be remaining to be divided in equal parts among them.'

The court in this case held that such words created contingent remainders in favor of his children rather than vested remainders. On petition for rehearing [88 Ind. App.] on page 214

[169 N.E.] on page 539 of the decision, the court draws the distinction between cases where the devise over is to a class in which cases vested remainder are created, and the facts of the Hackleman case in the following words: '* * * In the Hackleman will, the devise over is not to testator's children as a class, but to such of the testator's children as should be living at the time of the death of the life tenant. * * * To become a remainderman under the Hackleman will, the child of the testator must have survived the life tenant. Until the death of Hackleman's wife, it was uncertain who would survive her, and in that lay the contingency on which rested the vesting of the remainder.' "

The *Beisel* case was cited by and relied upon in Page, *supra*, as authority for the principles stated in § 43.12. See also *Epply v. Knecht* (1967), 141 Ind. App. 491, 230 N.E.2d 108, where the court construed words of survivorship in a testator's will to create contingent, rather than vested remainders.

Appellant Collins, however, draws our attention to three cases which, she alleges, support her position that the remainder here involved is vested, and not contingent, viz: *Busick v. Busick* (1917), 65 Ind. App. 655, 115 N.E. 1025; *Alsman v. Walters* (1914), 184 Ind. 565, 106 N.E. 879; and *Aspy v. Lewis* (1898), 152 Ind. 493, 52 N.E. 756.

Examination of these cases reveals that in each of them the central issue was the proper construing of an ambiguous will. Since Devening's will in the instant case is not ambiguous in its intent, the cases cited by appellant are inapposite to the present issues.

From a close reading of Item 3 of testator's will it is apparent that the testator intended to create a contingent remainder in such of his grandchildren who might survive their mother. Since this intent contravenes no dispositive rule of substantive law, it is our duty to effectuate the provisions of this will.

We therefore hold that the trial court committed reversible error in its determination of the shares to be distributed to the grandchildren of the testator.

## II.

The second issue raised for our consideration is whether in the absence of any manifestation of intent in the will of Devening a per stirpes or per capita construction should be made of the devises to Devening's grandchildren. Due to our disposition of the issue immediately above, we feel it is unnecessary to discuss Issue II; indeed, a decision on Issue II, in view of our resolution of Issue I, would only be dicta on the facts presently before the court.

## III.

The third issue for our consideration is whether the heirs of Malbrook Allender are entitled to a present interest in the life estate Connie deeded to Gladys in 1947 (Gladys' life estate *pur autre vie* for the life of Connie). The trial court determined that only Gladys' eight surviving children were entiteled to receive the use and income from this interest and, conversely, that the heirs of Malbrook Allender were not entitled to such use. We agree.

In February, 1947, Connie and her husband conveyed to Gladys by quitclaim deed all their interest in the property. At that time Connie's interest consisted of a life estate, vested in interest, though not yet vested in possession. On Jessie's death in 1960 this deed operated to give Gladys a life estate *pur autre vie*[2] as to that interest in the property which Connie otherwise would have held.

A holder of a life estate may convey his interest in the land but cannot create a greater interest then that which he owns. *Cypress Creek Coal Co. v. Boonville Mining Co.* (1924), 194 Ind. 187, 142 N.E. 645. A life estate terminates on the death of the person on whose life the estate is limited. C.J.S., *Estates*, § 65 Life Estates.

2. Since Connie's remainder was vested in interest on testator's death in 1936, a quitclaim deed executed by her in 1947 operated to transfer her remainder, even though the possessory interest in that estate was delayed until Jessie's death in 1960. Had Connie's remainder been contingent, the quitclaim deed of 1947 could not have transferred such an interest. See *McAdams v. Bailey* (1907), 169 Ind. 518, 82 N.E. 1057.

A search of the cases reveals that Indiana has not yet adopted a definitive rule regarding the descendability of an estate *pur autre vie*; nor is it clear, following the death of a tenant *pur autre vie*, what disposition is to be made of such an estate pending the death of the *cestui que vie*. Appellant cites the case of *Graham v. Sinclair* (1925), 83 Ind. App. 58, 147 N.E. 634, as holding that an estate *pur autre vie* does not descend. We believe that appellant's reliance on the *Graham* case is misplaced, for that case dealt primarily with a life estate held by tenants by entireties, who, upon their subsequent divorce, became tenants in common. The *Graham* court's broad language, which appears to be directed to the subject of the descendability of life estates *pur autre vie* in general, was unnecessary for the ultimate holding in that case; accordingly, we decline to be bound by the dicta in that decision.

The rule at early common law was that a life estate *pur autre vie* could not descend; thus, following the intestate death of a tenant *pur autre vie*, and in the absence of the designation of a "special occupant" by the grantor, the estate *pur autre vie* could be possessed by the first taker (known as a "general occupant"), even if that person were a total stranger. 2 Bl. Comm. 259. Whatever may have been the arcane logic of that rule at common law, its *ratio legis* has long been extinct. We believe that the better rule, which is eminently more compatible with contemporary expectancies of those with property to leave to their heirs, is embodied in the following provisions of the Restatement of the Law of Property:

"§151. DISPOSITION OF ESTATE FOR LIFE, ON INTESTATE DEATH OF THE OWNER THEREOF, WHEN SUCH ESTATE CONTINUES SUBSEQUENT TO HIS DEATH.

When an estate for life continues subsequent to the death of the owner thereof, such estate, on his intestate death, passes

(a)   to those persons who are special occupants of the affected land, as a result of the inclusion of appropriate words of designation in the original creation of the estate for life, or in a transfer, theretofore made, of such estate for life; and

(b)    in all cases where there are no such special occupants, to the personal representative of the deceased owner, to be distributed in the same manner as chattels personal of such owner."

The Restatement's Special Comment to the above section states as follows:

"Thus this Section embodies the rule adopted in England by [certain] statutes,[3] and excludes the pre-existing doctrines as to 'general occupants.' This result does not rest upon proof that these English statutes form a part of the law of a state, but rather upon the position that these statutes merely declare a result which would have been reached in due time if the problem had been allowed to be litigated under an evolving common law."

We therefore hold that upon Gladys' intestate death her estate *pur autre vie* went to her heirs under the Indiana laws of intestacy.[4]

Thus the trial court did not err in its determination that Malbrook Allender's heirs are not entitled to a present interest in Gladys' life estate *pur autre vie*.

## IV.

The fourth issue for our consideration is whether the trial court erred in its decree of summary judgment. Appellant maintains that the trial court did not state (1) the issues upon which it found no dispute as to material facts; (2) the material facts; (3) the reasons for granting the summary judgment; and (4) the rights and interests of the parties.

Due to our discussion and resolution of the previous questions presented for our review, we find it unnecessary to consider this issue as to those questions discussed in Issue I, *supra*. As to those questions discussed in Issue III, *supra*, we find the decree of summary judgment to be proper.

Affirmed in part; reversed in part, and remanded for action not inconsistent with this opinion.

---

3.   29 Chas. II, c. 3, 1677 (Statute of Frauds); and 14 Geo. II, c. 20, § 9, 1741.

4.   IC 1971, 29-1-2-1 (Burns Code Ed.).

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 369 N.E.2d 641.